UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
------------------------------------------------------------------------X
BING WU, FENG CHUN GUAN, TINA WANG, GUI BIN
CAI, JUN ZHANG, QIN PING YUAN, JIN LU MA, and
ZHEN HAI HE,

Plaintiffs,                                          **COMPLAINT**

    -against-                                       **No. 3:08-cv**

CHANG'S GARDEN OF STORRS, L.L.C., LE SHIH
CHANG, HSIANG I CHANG, and WEI-WEI CHANG,

Defendants.
------------------------------------------------------------------------X


<u>COMPLAINT</u>

1.   Plaintiffs Bing Wu, Feng Chun Guan, Tina Wang, Gui Bin Cai, Jun Zhang, Qin

Ping Yuan, Jin Lu Ma, and Zhen Hai He (collectively "Restaurant Workers") were all

employees of Chang's Garden Restaurant, owned and operated by Le Shih Chang and his

father Hsiang I Chang, and owned in part by Le Shih Chang's older sister, Wei Wei

Chang (collectively, "Defendants"), at various periods between 1999 and 2008.

2.   Each Restaurant Worker regularly worked approximately 70 hours per week, but

none received overtime compensation as required by state and federal law, and most did

not receive the lawful state or federal minimum wage.  During their employment, the

Defendants housed the Restaurant Workers in a cramped, dilapidated basement apartment

that violated provisions of the municipal housing and zoning codes.

3.   In addition, the Defendants breached explicit and implied oral promises made to

the employees, and discriminated against Plaintiff Tina Wang in terms of pay based on

her gender.

4.   Restaurant Workers bring this action in order to recover monies owed to them in unpaid wages and unpaid overtime, liquidated damages and attorney's fees, and damages for intentional and negligent infliction of emotional distress by the Defendants.

## JURISDICTION AND VENUE

5.   This court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). This court has supplemental jurisdiction over the Restaurant Workers' state law claims pursuant to 28 U.S.C. § 1367.

6.   Venue is proper pursuant to 28 U.S.C. § 1391(b), as all events giving rise to the claim occurred within this district, and pursuant to 28 U.S.C. § 1391(c), as Defendant Chang's Garden Restaurant is subject to personal jurisdiction in the State of Connecticut.

## PARTIES

7.   Plaintiff Bing Wu was employed from on or about September 7, 2004, until on or about December 30, 2007, as a delivery person by Defendants.

8.   Plaintiff Feng Chun Guan was employed from on or about January 20, 2007, until on or about August 20, 2007, as a kitchen helper by Defendants.

9.   Plaintiff Tina Wang was employed from on or about August 15, 2007, until on or about February 11, 2008, as a prep cook by Defendants.

10.   Plaintiff Gui Bin Cai was employed from on or about March 23, 2002, until on or about July 26, 2007, as a prep cook by Defendants.

11.   Plaintiff Jun Zhang was employed from on or about September 27, 2005, until on or about October 31, 2006, as a deep fry cook by Defendants.

12.     Plaintiff Qin Ping Yuan was employed from on or about May 4, 2003, until on or about August 15, 2007, as a deep-fry cook by Defendants.

13.     Plaintiff Jin Lu Ma was employed from on or about July 18, 2003, until on or about June 30, 2007, as a stir-fry cook by Defendants.

14.     Plaintiff Zhen Hai He was employed from on or about July 1, 1999, until on or about February 15, 2002, and then again from on or about August 1, 2007, until on or about February 11, 2008.  In the latter period, Mr. He was employed as the main chef by Defendants.

15.     Defendant Chang's Garden of Storrs, L.L.C. ("Chang's Garden") is a limited liability company that registered in Connecticut in 1998. Chang's Garden operates Chang's Garden Restaurant.

16.     Defendant Le Shih Chang is an owner and manager of Chang's Garden Restaurant. Defendant Le Shih Chang was at all relevant times an employer of each Plaintiff under state and federal law.

17.     Defendant Hsiang I Chang is an owner, the President, and the only registered principal of Chang's Garden. Defendant Hsiang I Chang was at all relevant times an employer of each Plaintiff under state and federal law.

18.     Defendant Wei Wei Chang is an owner and dining room manager at Chang's Garden. Defendant Wei Wei Chang was at all relevant times an employer of each Plaintiff under state and federal law.

STATEMENT OF FACTS

Chang's Garden Restaurant Operations

19.    Le Shih Chang was the manager of Chang's Garden Restaurant and oversaw daily operations of the Restaurant at all times relevant hereto.

20.    Hsiang I Chang, father of Le Shih Chang, is the former manager of Chang's Garden Restaurant, and participated in overseeing the operations of the Restaurant at all times relevant hereto.

21.    Wei Wei Chang, older sister of Le Shih Chang, was dining room manager of Chang's Garden Restaurant and oversaw daily operations of the Restaurant at all times relevant hereto.

22.    Le Shih Chang, his father Hsiang I Chang, and his three sisters Wei Wei Chang, Shu San Chang and another sister whose name is unknown, each own one of the five outstanding shares of Chang's Garden.

23.    All three individual Defendants had the power to hire, fire, and determine amount of pay, role, and responsibilities of the employees of Chang's Garden Restaurant.

24.    At all time relevant hereto, Chang's Garden had an annual gross volume of sales or business done not less than $500,000.

25.    Defendants required each of the Restaurant Workers to work approximately twelve hours per day Monday-Friday and approximately ten hours per day on one weekend day, for a total work week of approximately seventy hours.

26.    The Restaurant Workers typically received two 10-minute breaks each work day, including time provided for meals.  During these breaks, if work arose, Defendants required the Restaurant Workers to stop eating and attend to the work.

27.     The Restaurant Workers' salaries were approximately $200-$300 less per month than those received by workers in other Chinese restaurants in the Storrs area.

28.     Defendants failed to post a notice explaining the Fair Labor Standards Act in a conspicuous place in the workplace, as prescribed by the Wage and Hour Division of the U.S. Department of Labor and required by 29 C.F.R. § 516.4.

29.     Defendants openly disregarded the law by regularly serving alcohol to university students from the surrounding area without verifying their age.

30.     Defendants intentionally violated provisions of the Connecticut Uniform Food, Drug, and Cosmetic Act, Conn. Gen. Stat. § 21a-93 and § 21a-102 by adding MSG to foods despite advertising otherwise.

31.     Defendants intentionally threatened public health and safety by violating Conn. Agencies Regs. § 19-13-B40(a).  Specifically, Defendants at times reused the rinds of oranges previously served to customers, without washing, in the preparation of dishes that required them as an ingredient for other customers.

32.     Defendants also intentionally threatened public health and safety by violating Conn. Agencies Regs. § 19-13-B42(b), despite the Restaurant Workers' requests to make repairs to a stove exhaust pipe in the kitchen, which regularly dispelled sludge on to the floors.

33.     Chang's Garden Restaurant is featured on the widely used food ordering website www.campusfood.com, where customers can order meals and pay for their food and delivery directly through the internet.

Method of Hiring

34.     At different times, Mr. Wu, Mr. Guan, Mr. Zhang, Mr. Ma, and Mr. He learned about job openings at Chang's Garden at various employment agencies in Flushing, N.Y. and Manhattan, N.Y.  The employment agencies were typically small, transient operations.

35.     Mr. Wu, Mr. Guan, Mr. Zhang, Mr. Ma, and Mr. He each paid a flat fee to their respective employment agency, and received a slip of paper with the contact information for Chang's Garden, the title of the position available, and the salary offered.

36.     Mr. Wu, Mr. Guan, Mr. Zhang, Mr. Ma, and Mr. He each called Chang's Garden, and spoke with a person who identified himself as Le Shih Chang, and who confirmed to each man the job offer to work at Chang's Garden.

37.     Defendant Le Shih Chang then told Mr. Wu, Mr. Guan, Mr. Zhang, Mr. Ma, and Mr. He which bus would transport them from Manhattan to Storrs and that he would pick them up from the bus stop.

38.     Soon after each man's conversation with Le Shih Chang, Mr. Wu, Mr. Guan, Mr. Zhang, Mr. Ma, and Mr. He packed up a few personal items and boarded buses in Manhattan's Chinatown area with "Connecticut" marked as their destination.

39.     Neither Mr. Wu, Mr. Guan, Mr. Zhang, Mr. Ma, nor Mr. He knew where Connecticut was located nor where in Connecticut he was going when he accepted the job or boarded his bus.

Method of Housing

40.     After their arrival in Connecticut, Defendant Le Shih Chang transported each Restaurant Worker to the basement of his secluded, suburban home where they resided throughout their employment.

41.     Defendant Le Shih Change supplied housing to approximately eight or nine employees at a time, in a basement space approximately 1000 square feet.

42.     The living area contained five bedrooms, two toilets, two showers, one living room and one kitchen.

43.     At times when eight employees resided in the basement, two of the bedrooms each housed two employees, three of the bedrooms each housed one employee, and one employee slept in the living room.

44.     The basement was infested with rats and cockroaches, the kitchen sink was nonfunctional, and the bathroom ceiling was leaking.

45.     Defendants would also turn off the heat in Defendant Le Shih Chang's basement during the day, though the Restaurant Workers generally spent all hours not at the restaurant, including their one day off per week, in the basement.

46.     Defendants housed the Restaurant Workers in Le Shih Chang's basement in violation of the zoning and housing provisions of the Mansfield municipal code.

47.     The Mansfield zoning code allows a maximum of four unrelated parties to reside in a single family dwelling such as Le Shih Chang's residence.  The employees housed in the basement comprised eight or nine unrelated parties.

48.    The Mansfield housing code requires separate egress for all bedrooms in the form of a door or accessible window.  Le Shih Chang's basement housing failed to meet these requirements.

Bing Wu

49.    Mr. Wu began work on or around September 7, 2004, as a delivery person with a salary of $650 paid twice per month, typically on the first and the sixteenth day of each month (approximately $4.14/hour).

50.    Mr. Wu kept some portion of any tips he received while on the job.  When the customer paid in cash, Mr. Wu was generally permitted to keep the tip. When customers ordered and paid for a food delivery online, Defendants unlawfully retained a portion of the designated tips for themselves.  Online food purchases constituted approximately 30% of Mr. Wu's deliveries.

51.    Mr. Wu received $0.50 of the $1.00 delivery fee charged to customers for each delivery by Defendants.

52.    Mr. Wu received a pay raise on November 1, 2004, and thereafter received $700 twice per month (approximately $4.45/hour) until his termination on or around December 30, 2007.

53.    Upon being fired, Mr. Wu told Le Shih Chang that he felt that Mr. Chang had broken numerous labor and tax laws with respect to this employment.  Le Shih Chang responded with a statement substantially similar to: "You already are planning to sue me, so sue me... I have already spoken to a lawyer."

54.     On or about August 12 2007, Mr. Wu confronted Wei Wei Chang about the tip stealing from online orders.  Wei Wei Chang responded to the effect, "Do you have proof?" and ended stating to the effect, "Either you go or I go."

Feng Chun Guan

55.     Mr. Guan started his employment on or around January 20, 2007 as a cook at a salary of $750 paid twice per month, typically on the first and the sixteenth day of each month (approximately $4.77/hr).

56.     Mr. Guan received two pay raises throughout his employment.   Beginning on or around April 16, 2007, Mr. Guan received $800 twice per month (approximately $5.09/hr).  Beginning on or around August 1, 2007 until he was fired on or around August 20, 2007, Mr. Guan received $850 twice per month (approximately $5.41/hr).

Tina Wang

57.     Ms. Wang began her employment on or around August 15, 2007, and received a pro-rated salary for that day's work at a salary of $1500/month (approximately $4.77/hr).  The following month she received $800 twice per month, typically on the first and the sixteenth day of each month (approximately $5.09/hr).

58.     Ms. Wang's job was previously occupied by a male worker, Mr. Cai, also a Plaintiff in this action.  Before Ms. Wang began working, Defendants paid Mr. Cai $1050 twice per month (approximately $6.68/hr).

59.     Mr. Cai and Ms. Wang both engaged in substantially similar work. Specifically both were responsible for gathering the ingredients for the meals and doing basic food preparation work.

60.     Ms. Wang knew her salary was lower than wages received at similar establishments.

61.     Ms. Wang first asked for a raise during her second month working for the Defendants.

62.     After some bargaining and discussion, Defendants increased her salary to $850 paid twice per month (approximately $5.41/hr).

63.     After Defendants granted Ms. Wang her raise, Defendant Le Shih Chang stopped speaking with her.

64.     During Ms. Wang's third month working for Defendants, Mr. He asked Defendants for a raise on Ms. Wang's behalf.  The Defendants refused.

65.     Mr. He then asked Defendants why they paid male employees more than Ms. Wang, to which Defendants did not respond.

66.     On December 23, 2007 Wei Wei Chang and Bing Wu had an argument in the basement, during which Ms. Chang mentioned Ms. Wang's name.  Ms. Wang approached Wei Wei, asked her why she was being mentioned, and pointed out that she works very hard for little pay.  Wei Wei responded by saying the Defendants did not want a woman working in her position.

67.     Ms. Wang continued to receive $850 twice per month until her termination on or around February 11, 2008.

Gui Bin Cai

68.     Mr. Cai began working at Chang's Garden on or around March 23, 2002, and received a salary of $800 paid twice per month, typically on the first and the sixteenth day of each month (approximately $5.09/hr).

69.     Mr. Cai received various pay raises throughout his employment.   Beginning on or around March 1, 2003, Mr. Cai received $850 twice per month (approximately $5.41/hr). Beginning on or around March 1, 2004, Mr. Cai received $900 twice per month (approximately $5.73/hr).  Beginning on or around March 1, 2005, Mr. Cai received $950 twice per month ($6.04/hr).  Beginning on or around March 1, 2006, Mr. Cai received $1000 twice per month ($6.36/hr).  Beginning on or around March 1, 2007 his termination on or about July 26, 2007, Mr. Cai received $1050 twice per month (approximately $6.68/hr).


Jun Zhang

70.     Mr. Zhang began working for Chang's Garden on or around September 27, 2005, as a deep fry cook at a salary of $750 paid twice per month, typically on the first and the sixteenth day of each month (approximately $4.77/hr).

71.     When he was hired, Defendants had agreed that Mr. Zhang would receive seven days paid vacation per year.  Mr. Zhang received only six days, however, and when he asked Defendant Le Shih Chang for the seventh, the Defendants refused to allow him to take his seventh vacation day.

72.     Mr. Zhang received multiple pay raises throughout his employment. Beginning on or around November 15, 2005, Mr. Zhang received $800 twice per month

(approximately $5.09/hr). Beginning on or around February 1, 2006, Mr. Zhang received $850 twice per month ($5.41/hr). Beginning on or around October 1, 2006 until his discharge on October 31, 2006, Mr. Zhang received $900 twice per month ($5.73/hr).

Qin Ping Yuan

73.    Mr. Yuan began working for Chang's Garden on or around May 4, 2003, as a deep fry cook at a salary of $850 paid twice per month, typically on the first and the sixteenth day of each month (approximately $5.41/hr).

74.    Mr. Yuan received a pay raise on or around December 1, 2004, and subsequently received $900 twice per month (approximately $5.73/hr). Beginning on or around March 1, 2005, Mr. Yuan received $950 twice per month (approximately $6.04/hr). Beginning on or around September 1, 2005, Mr. Yuan received $1000 twice per month (approximately $6.36/hr). Beginning on or around March 1, 2007 until his termination on August 15, 2007, Mr. Yuan received $1050 twice per month (approximately $6.68/hr).

Jin Lu Ma

75.    Mr. Ma started his employment on or around July 18, 2003, as a stir-fry cook earning a salary of $1050 paid twice per month, typically on the first and the sixteenth day of each month (approximately $6.68/hr).

76.    Mr. Ma received multiple pay raises throughout his employment. Beginning on or around July 1, 2004, Mr. Ma received $1100 twice per month (approximately $7.00/hr). Beginning on or around July 1, 2005, Mr. Ma's received $1150 twice per

month (approximately $7.32/hr). Beginning on or around July 1, 2006 until his termination on or around June 30, 2007, Mr. Ma received $1200 twice per month (approximately $7.63/hr).

<u>Zhen Hai He</u>

77.     Mr. He first began working for Chang's Garden on or around July 1, 1999, as a prep cook at a salary of $750 paid twice per month, typically on the first and the sixteenth day of each month (approximately $4.77/hr).

78.     Mr. He received multiple pay raises throughout his employment. Between the approximate dates of July 1, 1999 and February 15, 2002, Mr. He's pay increased from approximately $750 paid twice per month to approximately $1000 paid twice per month (approximately $6.36/hr). On around February 15, 2002, Mr. He voluntarily terminated his employment with Chang's Garden.

79.     On or around August 1, 2007, Mr. He began working for Chang's Garden again after Le Shih Chang telephoned Mr. He and offered him a position as a senior kitchen staff member. Le Shih Chang assured Mr. He that he would "start him off" at a salary of $2600/month (approximately $8.27/hr), which is the salary Defendants paid Mr. He until his termination in February 2008, even though the senior kitchen staff member employed prior to Mr. He had received $2800/month (approximately $8.91/hr).

80.     Around September 2007, Ya Hua Lin, Wei Wei Chang's brother-in-law began working at Chang's Garden.

81.     In an effort to push Mr. He out of his role as head chef, a position Ya Hua Lin now holds, Defendants began to treat Mr. He very poorly.

82.     Additionally, Le Shih Chang began to frequently demean the quality of Mr. He's work.

83.     Mr. He terminated his employment on or around February 11, 2008.


FIRST CLAIM FOR RELIEF
FAIR LABOR STANDARDS ACT

84.     The Restaurant Workers repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

85.     The Restaurant Workers bring this claim under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), against all Defendants.

86.     At all times relevant hereto, each Defendant was an "employer" of each Restaurant Worker within the meaning of 29 U.S.C. § 203(d).

87.     At all times relevant hereto, each Restaurant Worker was an "employee" of each Defendant within the meaning of 29 U.S.C. § 203(e)(1).

88.     Defendants willfully failed to pay Mr. Wu, Mr. Guan, and Ms. Wang the federal statutory minimum wage throughout their entire employment, and failed to pay Mr. Cai and Mr. Zhang the federal statutory minimum wage during a portion of their employment, in violation of 29 U.S.C. § 206 (a)(1).

89.     Defendants willfully paid Ms. Wang wages substantially lower than those paid to male employees for equal work requiring equal skill, effort and responsibility, under similar work conditions, in violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1).

90.     Defendants willfully failed to pay all Restaurant Workers overtime pay for all hours worked in excess of forty hours per week for each week, in violation of 29 U.S.C. § 207(a)(1).

91.      Defendants willfully failed to make, keep, and preserve records of the wages paid and hours worked of all Restaurant Workers in violation of 29 U.S.C. § 211(c).

92.      As a result of these violations, all Restaurant Workers suffered damages and bring suit herein pursuant to 29 U.S.C. § 216(b).

93.      Defendants are jointly and severally liable to all Restaurant Workers for violations of their rights under federal law.

94.      Mr. Wu, Mr. Guan, Ms. Wang, Mr. Cai, and Mr. Zhang are entitled to an award of damages for unpaid minimum wages, plus liquidated damages in an equal amount, interest, and attorney's fees, in an amount to be determined at trial.

95.      Ms. Wang is entitled to an award for failure to pay wages commensurate with those paid to male workers performing identical work, plus liquidated damages in an equal amount, interest, and attorney's fees, in an amount to be determined at trial.

96.      All Restaurant Workers are entitled to an award of damages for unpaid overtime, plus liquidated damages in an equal amount, interest, and attorney's fees, in an amount to be determined at trial.

SECOND CLAIM FOR RELIEF
CONNECTICUT WAGE AND HOUR LAW

97.      The Restaurant Workers repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

98.      The Restaurant Workers bring this claim under Conn. Gen. Stat. §§ 31-58 *et seq.* of the Connecticut Minimum Wage Act against all Defendants.

99.      At all times relevant hereto, each Defendant was an "employer" of each Restaurant Worker within the meaning of Conn. Gen. Stat. § 31-58(e).

100.    At all times relevant hereto, each Restaurant Worker was an "employee" of each Defendant within the meaning of Conn. Gen. Stat. § 31-58(f).

101.    At all relevant times, each Defendant "employed" each Restaurant Worker within the meaning of Conn. Gen. Stat. § 31-58(h).

102.    Defendants willfully failed to pay Mr. Wu, Mr. Guan, Ms. Wang, Mr. Cai, Mr. Zhang, and Mr. Yuan the state statutory minimum wage throughout their entire employment, and failed to pay Mr. Ma the state statutory minimum wage during a portion of his employment, in violation of Conn. Gen. Stat. § 31-60.

103.    Defendants willfully failed to pay all Restaurant Workers overtime pay for all hours worked in excess of forty hours per week for each week, in violation of Conn. Gen. Stat. § 31-76c.

104.    Defendants willfully paid Ms. Wang wages substantially lower than those paid to male employees for equal work requiring equal skill, effort and responsibility, under similar work conditions, in violation of Conn. Gen. Stat. § 31-75, for which Ms. Wang is entitled to bring a private action pursuant to § 31-76.

105.    Defendants willfully failed to distribute records of hours worked, earnings and overtime to the Restaurant Workers, in violation of Conn. Gen. Stat. § 31-13a.

106.    Defendants willfully failed to keep records of hours worked by the Restaurant Workers, in violation of Conn. Gen. Stat. § 31-66.

107.    Defendants willfully failed to provide 30 consecutive minutes for a meal within a seven and one-half hour time period, in violation of Conn. Gen. Stat. § 31-51ii(a).

108.    As a result of these violations, all Restaurant Workers suffered damages.

109.    Defendants are jointly and severally liable to all Restaurant Workers for violations of their rights under state law.

110.    Mr. Wu, Mr. Guan, Ms. Wang, Mr. Cai, Mr. Zhang, Mr. Yuan, and Mr. Ma are entitled to an award of damages for twice the amount of unpaid wages, plus interest, and attorney's fees, in an amount to be determined at trial, pursuant to Conn. Gen. Stat. §§ 31-68(a), 31-76.

111.    Ms. Wang is entitled to an award for failure to pay wages commensurate with those paid to male workers performing identical work, plus liquidated damages, interest, and attorney's fees, in an amount to be determined at trial, pursuant to Conn. Gen. Stat. §§ 31-68(a), 31-76.

112.    All Restaurant Workers are entitled to an award of damages for twice the amount of unpaid overtime, plus liquidated damages, interest, and attorney's fees, in an amount to be determined at trial, pursuant to Conn. Gen. Stat. §§ 31-68(a), 31-76.


THIRD CLAIM FOR RELIEF
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

113.    The Restaurant Workers repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

114.    The Restaurant Workers bring this claim against all Defendants.

115.    Defendants intentionally engaged in extreme and outrageous conduct which Defendants knew or should have known would inflict severe emotional distress on the Restaurant Workers.

116.    Defendants' conduct which intentionally inflicted distress included, but is not limited to, systematic abuse, criticism and harassment in the workplace, the housing of

the Restaurant Workers in unsanitary, poorly ventilated, substandard housing as a customary condition of their employment, and the deliberate geographic isolation of the Restaurant Workers from other Mandarin speakers.

117.    The Restaurant Workers suffered severe emotional distress that included emotional reactions such as shame, humiliation, embarrassment, anger, disappointment, worry, helplessness, powerlessness, and loss of sleep. This distress was directly caused by Defendants' intentional acts.

118.    The Restaurant Workers are entitled to monetary relief for both compensatory and punitive damages in an amount to be determined at trial.

FOURTH CLAIM FOR RELIEF
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

119.    The Restaurant Workers repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

120.    The Restaurant Workers bring this claim against all Defendants.

121.    Defendants recklessly, and with disregard for the rights of the Restaurant Workers, engaged in conduct which created an unreasonable risk of causing the Restaurant Workers severe emotional distress, with the potential to inflict illness or bodily harm.

122.    Defendants' conduct which negligently inflicted distress included, but is not limited to, systematic abuse, criticism and harassment in the workplace, the housing of the Restaurant Workers in unsanitary, poorly ventilated, substandard housing as a customary condition of their employment, and the deliberate geographic isolation of the Restaurant Workers from other Mandarin speakers.

123.    The Restaurant Workers suffered severe emotional distress that included emotional reactions such as shame, humiliation, embarrassment, anger, disappointment, worry, helplessness, powerlessness, and loss of sleep.  This distress was directly caused by Defendants' negligent acts.

124.    The emotional distress suffered by the Restaurant Workers was sufficient to create a risk of illness or bodily harm.

125.    The Restaurant Workers are entitled to monetary relief for both compensatory and punitive damages in an amount to be determined at trial.

FIFTH CLAIM FOR RELIEF
UNJUST ENRICHMENT AND QUANTUM MERUIT

126.    The Restaurant Workers repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

127.    The Restaurant Workers bring this claim against all Defendants.

128.    By working at Chang's Garden, the Restaurant Workers provided benefits to Defendants.

129.    The Restaurant Workers reasonably expected to be compensated for the labor they provided to Defendants.

130.    Defendants' unjust failure to pay the Restaurant Workers prevailing wages for the labor performed constituted a distinct detriment to the Restaurant Workers.

131.    Accordingly, the Restaurant Workers are entitled to money damages equal to the reasonable value of the labor provided to Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Restaurant Workers respectfully request that this Court:

132.    Award Plaintiffs monetary damages for unpaid minimum wages and unpaid overtime, plus liquidated damages in an equal amount and interest, as provided by FLSA, 29 U.S.C. § 216(b), in an amount to be determined at trial;

133.    Award Plaintiffs twice the full amount of wages and overtime earned, minus any amount actually paid by the Defendants, plus liquidated damages in an equal amount and interest, as provided by Conn. Gen. Stat. § 31-68(a), in an amount to be determined at trial;

134.    Award Plaintiff Tina Wang the difference between the amount of her wages and the maximum wage paid to male employees for equal work requiring equal skill, effort and responsibility, under similar work conditions, as provided by Conn. Gen. Stat. § 31-76 and the Equal Pay Act, 29 U.S.C. § 206(d)(1);

135.    Award Plaintiffs compensatory and punitive damages for Defendants' violations of Connecticut common law (quantum meruit/unjust enrichment, intentional infliction of emotional distress, and negligent infliction of emotional distress), in an amount to be determined at trial;

136.    Award attorneys' fees and costs to Plaintiffs for legal services provided by the Jerome N. Frank Legal Services Organization pursuant to 29 U.S.C. § 216(b) and Conn. Gen. Stat. §§ 31-68(a);

137.    Grant such additional and further relief as the Court deems just and proper.

## JURY DEMAND

138.    Plaintiffs hereby demand a jury trial on all claims.


Dated: May 13, 2008



_____
Michael J. Wishnie, Supervising Attorney ct27221
Christopher Lasch, Supervising Attorney ct27139
Anjali Dalal, Law Student Intern
Kirill Penteshin, Law Student Intern
Workers and Immigrants Rights Advocacy Clinic
Jerome N. Frank Legal Services Organization
Yale Law School
127 Wall St.
New Haven, CT 06511
(203) 432-4800