UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BING WU, et al<br>    Plaintiffs<br><br>v.<br><br>CHANG'S GARDEN OF STORRS, L.L.C., et al<br><br>    Defendants | CIVIL ACTION NUMBER:<br><br>3:08-CV-00746-WWE<br><br><br><br>March 8, 2010 |

**DEFENDANTS' SUBSTITUTED REPLY TO PLAINTIFFS'
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure Defendants Hsiang I Chang ("Hsiang I") and Wei Wei Chang ("Wei Wei") hereby submit this Substituted Reply to the plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment dated February 8, 2010 ("Opposition"). The purpose of the Substituted Reply is correct the original Reply, dated March 1, 2010, in order to withdraw the argument that the plaintiffs failed to file a Local Rule 56(a)2 Statement. The only correction or change in the Substituted Reply is the withdrawal of the argument that the plaintiffs failed to file the Local Rule 56(a)2 Statement. The defendants included this argument in their original Reply because, for some reason, the undersigned never received the CMECF e-mail regarding the filing of the filing of the Local Rule 56(a)2 statement and, therefore, believed that it had not been filed.

    The Substituted Reply now addresses: (1) the arguments set forth by the Plaintiffs in their Opposition; and (2) the misstatements made by the plaintiffs in their Opposition.

**I.       The Plaintiffs Failed To Include A Local Rule 56(a)2 Statement With Their Opposition To The Defendants' Motion For Summary Judgment.**

Argument withdrawn.

**II.      The Defendants Are Entitled to Summary Judgment On Counts Five and Seven of the Plaintiff's Fourth Amended Complaint.**

On page 2 of their Opposition, the plaintiffs indicate that they are not opposing the granting of summary judgment as to the Fifth Claim for Relief (Unjust Enrichment and Quantum Meruit) and the Seventh Claim for Relief (Breach of Implied Contract). As a result, the defendants are entitled to summary judgment in their favor on those counts.

**III.     Misstatements Contained In Section II Of The Plaintiffs' Opposition.**

In Section II of their Opposition, entitled Facts and Proceedings, the plaintiffs make various statements which are either unsupported by evidence or which misstate the evidence. On Page 2 of the Opposition, the plaintiffs assert that Hsiang I founded Chang's Garden of Storrs, LLC. Although Hsiang I is listed as the sole member of the company and its statutory agent, the evidence produced by the plaintiffs does not establish that he "founded" the company. The facts reflect that Le Shih Chang invested all of the money needed to purchase and open the restaurant. (*See*, Ex. C to the Opposition at pp 62-63.) Because the plaintiffs failed to include pages 64 to 68 from the deposition of Hsiang I, which further clarifies the testimony, a copy is attached hereto as Exhibit A. On Page 2, the plaintiffs state that "Hsiang I personally selected Le Shih Chang to be the restaurant's manager...." The statement mischaracterizes the testimony of Hsiang I. The evidence, including the portions of the transcript cited by the plaintiffs, supports a finding that Le Shih Chang purchased the restaurant, made all of the decisions regarding the operation of the restaurant and managed all aspects and functions of the restaurant. (*See*, Ex. N to the defendants' Memorandum of Law at ¶¶ 4-15.)

On page 3, the plaintiffs assert that Wei Wei was a "joint employer" because she wrote and signed employee checks, paid workers their salary and controlled the distribution of tips. The evidence, however, indicates that Le Shih Chang or Susan Chang instructed Wei Wei to write and/or sign the checks. (*See*, Ex. M to the Opposition at pp. 65 and 75). As the plaintiffs failed to include pages 26-28, 35-44 and 76 of Wei Wei's deposition transcript, a copy is attached hereto as Exhibit B. The additional testimony reflects that Wei Wei was instructed to write and/or sign the majority of the checks in question.

At the bottom of page 3 where the plaintiffs assert that they "lived in the **unheated** basement of defendant Le Shih Chang's home." (Emphasis added.) The plaintiffs make this unfounded assertion several times in the Opposition. There is no factual basis for this statement and it is not supported by any evidence submitted by the plaintiffs. In her Declaration, plaintiff Tina Wang states that "[t]he basement was always very cold. When we would turn the heat up in the winter, somebody living upstairs would turn the heat down while we were away at work." (*See*, Ex. I to the Opposition at ¶ 15.) In his Declaration, plaintiff He states "[i]t was always very cold, even when they turned on the heat." (*See*, Exhibit H to the Opposition at ¶ 8.) These statements show that there was heat in the apartment and that the plaintiffs knew that there was heat.

IV.     **Argument**

    A.     **Hsiang I Chang Is Not An Employer As Defined BY The FLSA.**

In Section 4 of the Opposition, the plaintiffs attempt to characterize Hsiang I as an Employer under the definition of the FLSA. On Page 7 of the Opposition, the plaintiffs cite to the case of Donovan v. Grim Hotel Co., 767 F.2d 966 (5th Cir. 1984) to try to draw an analogy between the actions and conduct of Charles Alberding, the owner and operator of a hotel chain in eastern Texas, and Hsiang I. Unlike Mr. Alberding, the evidence in this case shows that Hsiang I did not: form or control Chang's Garden of Storrs, LLC (the

3

"LLC") as it was Le Shih Chang who formed and controlled the restaurant; did not hold the "purse-strings" of the restaurant nor did he control the policies of the restaurant as those functions were controlled by Le Shih Chang; did not manage the business or operations of the restaurant as those functions were handled by Le Shih Chang; and did not have the power to hire or fire any of the employees. (*See*, Defendants' Memorandum, Exhibit A at ¶¶ 4-13; Exhibit D; Exhibit E; and Exhibit N at ¶¶ 2-15.) On page 7, the plaintiffs assert that Hsiang I founded the LLC and named himself as President and sole member. However, the evidence shows that Le Shih Chang founded the LLC and named his father as the sole member and that Le Shih Chang controlled all aspects of the management and operation of the restaurant. Id. As the plaintiffs have taken a small excerpt of the deposition of Le Shih Chang, which is limited to 5 pages, the defendants have included the additional pages (pages 53 to 68) which clarify Le Shih Chang's testimony in this regard and have attached those pages hereto as Exhibit C.

    At the bottom of page 7 and top of page 8, the plaintiffs claim that Hsiang I retained "ultimate authority" because he signed a few checks, traveled to New York City to meet with the restaurant's accountant, disbursed money to himself and filed records associated with the LLC. On Page 7, the plaintiffs assert that Hsiang I traveled to New York City to sign tax documents with the accountant. The plaintiffs, however, only included page 23 of the deposition of Chen Wha ("David") Cheng - the restaurant's accountant. On pages 21 and 22, the accountant testified that Wei Wei and Hsiang I would only come to his office to pick up documents. There is nothing on page 23 that says that Hsiang I signed any tax documents. (A copy of pages 21 to 24 of the deposition testimony of Chen Wha Cheng is attached hereto as Exhibit D.) On Page 8, the plaintiffs assert that Hsiang I signed a $25,000 check to payable himself out of the Restaurant's account. (*See*, Ex. AA to the Opposition.) Le Shih Chang, however, testified that he wrote the check and asked his

father to sign and cash the check so that he could use the cash to pay for repairs to the restaurant's exhaust system. (A copy of Le Shih Chang's deposition testimony regarding this issue is attached in Ex. C at pp. 91 to 98.) This testimony shows that there is no dispute as to what the check was for and that the money belonged to Le Shih Chang.

At the bottom of page 8, the plaintiffs state that the defendants use a "rigid and erroneous application of factors articulated in *Carter v. Dutchess Comm. College....*" Not once in their Memorandum do the defendants cite to Carter v. Dutchess Comm. College. The defendants do, however, rely upon the economic reality test as set forth in Herman v. RSR Secs. Serv., Ltd., 172 F.3d 132, 139 (2d Cir. 1999) for the proposition that neither Hsiang I nor Wei Wei are "employers". The defendants then state that "[n]o single factor standing alone is dispositive of the issue, rather, the "economic reality" test encompasses the totality of the circumstances involved in each particular case." (*See*, Defendants' Memorandum at p. 7.)

On page 10, the plaintiffs cite to the deposition testimony of Hsiang I for the proposition that he opened the restaurant and authorized his son, Le Shih Chang, to manage the restaurant and to act as his agent. The plaintiffs, however, fail to point out that the reason Le Shih Chang listed his father as the sole member of the LLC was that Le Shih Chang was still a resident alien which prevented him from obtaining a liquor permit and had bad credit which prevented him from signing the lease. (*See*, Ex. N to the Defendant's Memorandum at ¶¶ 8-13.) The plaintiffs' argument completely ignores Le Shih Chang's affidavit and does nothing to rebut the sworn testimony of Le Shih Chang.

On page 11, the plaintiffs assert that Hsiang I fired a cook and cite to the Declarations of plaintiffs Guan and Wang. The Declarations of plaintiffs Guan and Wang, however, do not state that Hsiang I actually fired the cook. The Declarations state that Guan and Wang saw that Hsiang I was displeased with the cook and that the cook was

later fired. The Declarations do not state that it was Hsiang I who fired the cook or that he had anything to do with the firing of the cook. The Declarations simply assume that Hsiang I had something to do with the firing.

On page 12, the plaintiffs claim that Hsiang I periodically worked in the kitchen as a supervisor. The plaintiffs also claim that Le Shih Chang admitted that Hsiang I continued to work in the kitchen until 2008. The plaintiffs cite to the deposition testimony of Le Shih Chang to support their assertion. (See, Ex. E to the Opposition at p. 56)  On page 56 of his deposition, however, Le Shih Chang states that his father would only come in to help when he needed him. (Id.) The plaintiffs then claim that Hsiang I would instruct them on how to work and how to prepare dishes in the kitchen and cite to the Declarations of plaintiffs Cai (Ex. O), Guan (Ex. G), He (Ex. H), Wang (Ex. I) and the deposition testimony of plaintiff Ma (Ex. FF at p. 113.) Plaintiff Ma, however, actually testifies that Hsiang I never told him what to do. (See, Ex. FF to the Opposition at p. 113.) In his Declaration (Ex. O to the Opposition), plaintiff Cai actually states that in his early years Hsiang I would sometimes work in the kitchen and would show or tell newcomers how to cook dishes. Contrary to the plaintiffs' assertions, the evidence shows that Hsiang I did not tell the workers what to do or instruct them on how to work, but would occasionally help them in preparing meals or would show them how to make dishes which they might not have previously made.

On Page 13, the plaintiffs claim that Hsiang I made the decision not to purchase supplemental unemployment insurance as evidence that he had decision making authority regarding the plaintiffs' rate of compensation. Although the plaintiffs make this assertion, they have not cited to any evidence to support the statement. In fact, Le Shih Chang made all of the decisions regarding the restaurant's financial decisions. (See, defendants' Memorandum, Ex. N at ¶¶ 14-15 and Ex. A at ¶¶ 4-9.)

### B.     Wei Wei Chang Is Not An Employer As Defined By The FLSA.

On pages 14 and 15, the plaintiffs assert that a jury could find that Wei Wei was an employer in that she meets three of the four factors of the economic reality test. The plaintiffs then claim that Wei Wei had the power to hire and fire employees. In support of their position that Wei Wei had the authority to hire and fire employees, the plaintiffs claim that she hired or recruited Ya Hua Lin, her brother-in-law and former employee to work at the restaurant and cite to page 124 of Wei Wei's deposition testimony (Ex. M to the Opposition). Wei Wei, however, testified that she is married to Ya Hua Lin's brother and that Le Shih Chang asked Wei Wei for Ya Hua Lin's phone number. (*See*, Ex. M to the Opposition at pp. 124-25). On page 15, the plaintiffs claim that Ya Hua Lin testified that Wei Wei called him to tell him about the availability of a job and cite to Mr. Lin's deposition testimony (Ex. GG to the Opposition.) Mr. Lin, however, testified that the boss (Le Shih Chang) told Wei Wei about the job and that Wei Wei then called him. (Ex. GG to the Opposition at p. 143.) The inference the plaintiffs are tying to make is that Wei Wei had authority to hire her brother-in-law. The only inference that can be made, however, is that Le Shih Chang asked his sister to call Mr. Lin to see if he wanted a job. The evidence cited by the plaintiffs merely shows that Wei Wei was doing what Le Shih Chang asked to do and that she then contacted Mr. Lin. There is no evidence, whatsoever, that Wei Wei hired Mr. Lin or any other employees at the restaurant.

In the middle of page 15, the plaintiffs refer to various checks signed by Wei Wei and cite to page 62 of her deposition testimony (Ex. M to the Opposition), but fail to include page 63 in which Wei Wei testified that the checks were an issue between Mr. Lin and her brother Le Shih Chang. A copy of page 63 of Wei Wei's deposition testimony is included in Exhibit B to this Reply.

At the bottom of page 15, the plaintiffs cite to pages 103 to 105 of Le Shih Chang's deposition (Ex. DD to the Opposition) for the proposition that Le Shih Chang stated that Mr. Lin's employment is not his affair to imply that Wei Wei had control of the business. The deposition pages cited by the plaintiffs, however, have absolutely nothing to do with Mr. Lin. Rather the pages cited by the plaintiffs relate to Le Shih Chang's interactions with the restaurant's accountant and the hours that the plaintiffs worked at the restaurant. (*See*, Ex. DD to the Opposition at pp 103-105.) Consequently, the plaintiffs' assertions are unsupported by evidence and should be disregarded.

On pages 16 and 17, the plaintiffs claim that Wei Wei had the power to supervise and control the employee work schedules and their conditions of employment. Although the plaintiffs assert that Wei Wei had the power to supervise and control the employees' work schedules, they provide no support for the assertion and, instead, focus on the claim that she told some of the waiters or waitresses, none of whom are parties to the case, what to do if they asked. In the middle of page 16, the plaintiffs claim that Wei Wei admitted to giving instructions to the kitchen workers and cite to page 109 of her deposition testimony (Ex. M to the Opposition.) On page 109 of her deposition, it would appear that Wei Wei was saying that her brother, Le Shih Chang, would tell her to ask the kitchen staff to run certain errands. The fact that Wei Wei communicated instructions from Le Shih Chang or gave plaintiff Bing Wu instructions on where to deliver take-out orders, which is part of her job, does not show that she had the power to supervise and control the employee work schedules nor the conditions of their employment.

On pages 17 through 19, the plaintiffs claim that Wei Wei controlled the method and rate of payment to the plaintiffs. Although the plaintiffs cite to several instances where Wei Wei wrote out and/or signed several checks, she was told to do so by Le Shih Chang or her sister Susan Chang. Because the plaintiffs omit these pages from Wei Wei deposition

transcript, pages 27 to 28, 31, 35 to 41 and 65 are included in Exhibit B to this Reply. The fact that Wei Wei was instructed to write and/or sign checks by those who have authority to do so does not demonstrate that she had control over the methods and rates of payment.

On page 19, the plaintiffs claim that Wei Wei's conduct is similar to Sung Truong in the case of Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 265 (S.D.N.Y. 2008) who did not have authority to set wages, but was still determined to be an employer under the FLSA. Unlike Wei Wei, however, Sung Truong had "significant managerial authority" over two related restaurants in New York City, had the authority to terminate employees and to impose sanctions upon employees, assigned the employees with work duties including specifying what side work they had to perform, actually paid the employees their wages and maintained the books and records of the two restaurants that he managed. Id. The court also concluded that Truong understood the conditions under which the plaintiffs in that case were working, including their wages and benefits. Id. The evidence in this case shows that Wei Wei did not have authority to hire or fire employees, did not impose sanctions, only paid the employees when asked to do so by Susan or Le Shih Chang, did not maintain any of the books or records, had nothing to do with the plaintiffs' wages and benefits and had nothing to do with the plaintiffs' living or housing conditions.

### C-D.  Hsiang I And Wei Wei Chang Are Not Employers Under The CMWA.

On pages 20 to 23, the plaintiffs claim that a jury could find that Hsiang I and Wei Wei are employers under the Connecticut Wage and Hour Act C.G.S. §§ 31-58 et seq. ("CMWA"). The plaintiffs correctly point out that the term "employer", as used in C.G.S. § 31-72, encompasses an "individual who possess the ultimate authority and control ... to set the hours of employment and pay wages...." Butler v. Hartford Technical Institute, Inc., 243 Conn. 454, 464 (1997). The evidence, however, shows that neither Hsiang I nor Wei Wei had such "ultimate authority and control." Contrary to the plaintiffs' assertion, the

9

defendants do not rely upon that portion of Butler which addresses the criminal penalties set forth in C.G.S. § 31-71g.  Rather, the defendants rely on that portion of the case which addresses the definition of an employer under the civil aspects of C.G.S. § 31-72. Although C.G.S. § 31-71g imposes potential criminal penalties to an employer under the CMWA and C.G.S. § 31-72 provides for civil penalties, the person must still be an employer as the term is defined by C.G.S. § 31-72.

The plaintiffs make no arguments as to why Hsiang I meets the definition of an employer under the CMWA other than to say that he is an employer and cannot escape liability because he delegated his responsibility.  The plaintiffs' argument, however, simply begs the question and does not create an issue of fact.

The arguments as to why Wei Wei is an employer are even more specious.  On page 22, the plaintiffs admit that Wei Wei did not set the employees' work schedules, but yet claim that she controlled their hours by occasionally: telling the kitchen staff what some customers had ordered; by asking the kitchen staff to have clean glasses for the tables; or by asking the kitchen staff to prepare more rice.  On page 22 to 23, the plaintiffs admit that Wei Wei had no control over the determination of the plaintiffs' wages and benefits, but claim that she distributed tips and occasionally distributed their pay.  These arguments do not establish that Hsiang I and Wei Wei are "employers" under the CMWA and do not demonstrate genuine issues of material facts.

E.    **Neither Hsiang I nor Wei Wei Chang Violated CUTPA.**

On pages 23 to 33, the plaintiffs argue that Hsiang I, in his individual capacity, somehow violated CUTPA because the LLC paid Le Shih Chang $200 per month for each

plaintiff that resided in apartment in Le Shih Chang's house.[1] The arguments presented by the plaintiffs that Hsiang I violated CUTPA in his individual capacity are also specious and are unsupported by an real issues of fact. The gist of the plaintiffs' argument is that the LLC provided the housing to the plaintiffs and that Hsiang I should be personally liable because he controlled the LLC. This argument ignores the fact that the housing was provided as part of the plaintiffs' employment agreement with Le Shih Chang who, along with his wife, owned the house where the apartment is located. In essence, the plaintiffs are trying to argue that the LLC was the landlord and that a landlord-tenant relationship existed as opposed to the license for the use of the apartment as long as they remained employed at the restaurant. (A copy of the deed to the house is attached hereto as Exhibit E.) In addition, the plaintiffs' own complaint alleges that Le Shih Chang provided the housing to the plaintiffs. (*See*, Fourth Amended Complaint at ¶¶ 46-48 & 176.) That the LLC and then Chang's Garden of CT, Inc. ("Inc.") paid rent, on behalf of the plaintiffs, to Le Shih Chang for the license to remain in the apartment is irrelevant to the issues of the ownership of the apartment and the license to use the apartment. It should be noted that the LLC operated the restaurant until the end of 2004 and then the Inc. took over the operation of the restaurant. (*See*, Ex. E to the defendants' Memorandum of Law.)

On page 24, the plaintiffs say that "there is no material dispute of facts regarding the Restaurant Workers' claim that the LLC provided them with housing." This argument is simply a fiction. Le Shih Chang provided the housing to the plaintiffs as part of the employment agreement which is supported by the plaintiffs' own complaint. The plaintiffs also argue that the LLC "deducted $200 per month" from each plaintiffs' salary which is a

---

[1]   The plaintiffs make no arguments that Wei Wei violated CUTPA nor do they raise any issues of fact regarding Wei Wei and judgment should enter in her.

11

misrepresentation of the defendant's discovery response. (*See*, Ex. II to the Opposition.) The defendant's response states that "[t]hese payments were **in addition** to what each employee was receiving in monthly salary." (*See*, Ex. II to the Opposition (emphasis added); *See also*, Ex. E to the defendants' Memorandum.) Although the plaintiffs are attempting to argue that the LLC was the landlord and that, by virtue of his alleged control over the LLC, Hsiang I is the landlord, on page 26 of the Opposition, the plaintiffs refer to Le Shih Chang as being the landlord.

In order to differentiate <u>Guiel v. Barnes</u>, 100 Conn. 737 (1924), which stands for the proposition that employment-housing agreements only create a license for the use and occupancy of the premises, the plaintiffs claim that the defendants are ignoring the landlord-tenant statutes which were enacted in 1976. The defendants are not ignoring the landlord-tenant statutes, but are, instead, pointing out that the relationship between Le Shih Chang and the plaintiffs is that of a license to use the apartment and not a lease of the apartment. This distinction, which the plaintiffs fail to address, is important because a license in real property is the privilege to act on the land of another, without obtaining any interest in the property itself. <u>Muniz v. Kravis</u>, 59 Conn. App. 704, 757 A.2d 1207 (2000). Contrary to the plaintiffs' assertion, <u>Muniz</u> is still good law and holds that a plaintiff cannot state a cause of action under CUTPA on the basis of a license to use property, as the license does not vest the plaintiff with any interest in the property. In order to address <u>Muniz</u>, the plaintiffs make the ridiculous argument that <u>Muniz</u> was decided wrongly and then suggest that the Appellate Court should have decided the case in a manner more favorable to the plaintiffs' position. On page 30, the plaintiffs, again, state that the apartment did not have heat and also make the unsupported assertion, fro the first time ever in this litigation, that the plaintiffs were exposed to asbestos.

On pages 31 to 33, the plaintiffs argue that the LLC and Inc. should be liable to the plaintiffs under CUTPA because of the alleged housing violations in the apartment provided by Le Shih Chang.  The plaintiffs, however, fail to provide any legal support for the proposition that the LLC or the Inc. should be legally liable simply because they paid $200 per month to Le Shih Chang for each plaintiff who resided in the apartment.  Although the plaintiffs claim that <u>Muniz</u> was decided "wrongly", it is still good law in Connecticut and holds that when "premises are occupied pursuant to an employment agreement, the existence of a lease is not necessarily proven nor is a tenancy established."  <u>Muniz</u>, at 713-14.  (*Citing*, <u>Catropa v. Bargas</u>, 17 Conn. App. 285, 290 (1989.)  The court in <u>Muniz</u> held that the apartment which the defendants provided to the plaintiff, which was in addition to her salary, was incidental to the employment and was, therefore, a license. <u>Muniz</u> at 714.  The Court went on to state that "[n]ot every relationship, even assuming a landlord-tenant one, comes within the terms of CUTPA." <u>Muniz</u>, at 715.

In order to try to support their position that the LLC and Inc. should be liable under CUTPA, the plaintiffs, incorrectly, claim that the LLC and Hsiang I withheld money from the plaintiffs' wages to pay for their rent.  As discussed above, no funds were withheld from the plaintiffs.  The $200 per month paid to Le Shih Chang for each plaintiff residing in the apartment was **in addition** to the plaintiffs' agreed upon salary.  (*See*, Ex. E to the defendant's Memorandum.)

### F. Hsiang I Chang Is Not Liable For Any Claims Arising Out Of The Alleged Intentional Infliction of Emotional Distress.

On pages 33 to 38, the plaintiffs claim that there are disputes as to material fact regarding the intentional infliction of emotional distress ("IIED") claim as to Hsiang I and further claim that Hsiang I should be personally liable to the plaintiffs because the LLC paid

for their housing. The plaintiffs' entire IIED claim as to Hsiang I emanates out of the alleged housing conditions at the apartment which Le Shih Chang provided to the plaintiffs. The only connection that the plaintiffs can show between Hsiang I and the apartment is that the LLC paid to Le Shih Chang the sum of $200 per month for each plaintiff who resided in the apartment. As stated above and in the defendants' Memorandum, Hsiang I was a member of the LLC in name only and left all of the financial operations of the LLC to his son Le Shih Chang. On page 34, the plaintiffs, again, allege that the defendants were taking money out of the workers' paychecks to pay Le Shih Chang for housing. There is absolutely no support for the assertion that money was taken out of any of the plaintiffs' paychecks or wages to pay for housing. The plaintiffs were paid in cash and the $200 which went toward housing was in addition to each plaintiffs' agreed upon monthly salary. (*See*, defendants' Memorandum, Ex. A at ¶ 4 & 10-11 and Ex. E.)

### G.   Wei Wei Chang Is Not Liable For Any Claims Arising Out Of The Alleged Intentional Infliction of Emotional Distress.

On pages 38 to 42, the plaintiffs claim that Wei Wei's conduct toward plaintiff Bing Wu, only, amounts to IIED as to him and that there are issues of material fact regarding all four of the legal elements necessary to sustain the action. Plaintiff Wu, however, ignores that in IIED claims, courts act as gatekeepers to determine whether the allegations set forth in a complaint adequately state the type of conduct that would be actionable under such a claim. *See*, Tracy v. New Milford Public Schools, 101 Conn. App. 560, 569, 922 A.2d 280, cert. denied, 284 Conn. 910, 931 A.2d 935 (2007). Plaintiff Wu's claim against Wei Wei stems from his allegations that Wei Wei yelled at him, punished him when he tried to recover his tips and treated him poorly. (*See*, page 38 of the Opposition.) On page 39, plaintiff Wu claims that a jury could find that Wei Wei withheld his tips and regularly sought to exploit him financially. The only support provided for this allegation, is plaintiff

Wu's assertion that on one occasion Wei Wei allegedly failed to give him $3.00 out of a $5.00 tip. (*See*, Ex. J to the Opposition at ¶ 11.) Even assuming the truth of this allegation, it does not create a genuine issue of material fact as to the IIED claim.

As stated in the defendants' Memorandum, "'a routine employment action, even if made with improper motivations, does not constitute extreme or outrageous behavior.'" Adams v. The Hartford Courant and Tribune Co., 2004 WL 1091728 at *4 (D. Conn. 2004) (Exhibit F to the Memorandum) (*citing, inter alia*, Parsons v. United Techs. Corp., 243 Conn. 66, 88, 700 A2d 655 (1997)). The District Court of Connecticut has also held that "insults, verbal taunts, threats, indignities, annoyances, petty oppressions, or conduct that displays bad manners or results in hurt feelings, do not support a claim for intentional infliction of emotional distress." Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 195 (D. Conn. 2000). Furthermore, the facts of the other cases cited by the defendants in their Memorandum are far more egregious than the facts in this case and in each of the cases cited by the defendants, the courts determined that the claims did not have the extreme and outrageous conduct necessary to sustain a claim for IIED. Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Appleton v. Board of Education of the Town of Stonington, 254 Conn. 205, 210 (2000). The facts cited by plaintiff Wu simply do not amount to extreme and outrageous conduct.

### H. Neither Hsiang I Nor Wei Wei Chang Are Liable For Any Claims Arising Out Of The Alleged Negligent Infliction Of Emotional Distress.

On pages 42 to 45, plaintiffs Bing Wu and Jun Zhang assert that their negligent infliction of emotional distress claim against Hsiang I stems out of the conditions of the housing provided by Le Shih Chang. On page 44, the plaintiffs state that their negligent

infliction of emotional distress claims do not emanate out of their alleged termination from the restaurant.[2]/

The gist of the plaintiffs' claim is that by "deducting $200 a month from the plaintiffs' wages and paying Le Shih Chang to house them...," Hsiang I, through the LLC, created an unreasonable risk of causing the plaintiffs to suffer emotional distress. The plaintiffs then claim that it was foreseeable to Hsiang I that they might likely sustain emotional distress as a result of living in the apartment provided by Le Shih Chang. As stated in the defendants' Memorandum, in order to sustain an action the plaintiffs must prove that the defendant's conduct: (1) created an unreasonable risk of causing the plaintiffs to sustain emotional distress; and (2) the plaintiffs' distress was foreseeable. Carrol v. Allstate Ins. Co., 262 Conn. 433, 444 (2003). The only conduct which the plaintiffs can point to with regards to Hsiang I, is his tenuous relationship to the LLC and the fact that, up to the end of 2004, the LLC paid $200 a month to Le Shih Chang for each plaintiff that resided in the apartment. (*See*, Ex. E to the defendant's Memorandum and Ex. F to the Opposition.) Although it is clearly stated in the defendants' discovery responses that the $200 rental payment was in addition to the plaintiffs' monthly salary, the plaintiffs continue to erroneously claim that $200 per month was deducted from their wages. Id.

The plaintiffs then argue that Hsiang I should have realized that by having the LLC pay his son $200 a month for each plaintiff residing in the apartment, that there was a reasonable likelihood that the plaintiffs would suffer emotional distress. The plaintiffs ignore the fact that Le Shih Chang handled all of the financial transactions for both corporate entities. (*See*, Ex.s D and N to the defendants' Memorandum.) The plaintiffs

---

[2]/ The plaintiffs do not make any arguments nor raise any issues of fact in support of their claim that Wei Wei negligently inflicted emotional distress to these plaintiffs and judgment should, therefore, enter in her favor.

also fail to address the fact that the plaintiffs were not required to live in the apartment and could choose to live wherever they wanted, in which case Le Shih Chang would give them $200 a month to help offset their housing costs. (*See*, Exhibit F to the Opposition.) Finally, the plaintiffs must prove that the defendant's conduct was the cause of the plaintiff's distress. Carrol v. Allstate Ins. Co., 262 Conn. 433, 444 (2003). The plaintiffs claim that the cause of the alleged distress was the conditions of the housing provided to them by Le Shih Chang, not Hsiang I. In fact, Hsiang I had nothing to do with the conditions of the apartment provided to the plaintiffs by Le Shih Chang. (*See*, Ex. A to the defendants' Memorandum at ¶¶ 10-11.) There is no evidence that supports the plaintiffs' position that Hsiang I knew or should have known that his alleged conduct created an unreasonable risk of causing the plaintiffs to sustain emotional distress or that the plaintiffs' distress was or could be foreseeable to Hsiang I.

Finally, the defendants maintain that the housing provided by Le Shih Chang to the plaintiffs was incidental to the employment agreement which each plaintiff reached with Le Shih Chang and thus part of each plaintiffs' continuing employment relationship. As stated in the Memorandum, Connecticut law does not recognize negligence based emotional distress claims occurring within the continuing employment relationship. Pruitt v. Mailroom Technology, Inc, et al, 2007 WL 2302285 (D. Conn. 2007) (Exhibit G to the Defendant's Memorandum.)

    I.    **There Is No Basis To Pierce The Corporate Veil.**

On pages 45 to 50, the plaintiffs claim that the Court should pierce the corporate veils for both the LLC and for the Inc. so that Hsiang I and Le Shih Chang can be held personally liable to the plaintiffs. As Le Shih Chang is not a party to the Motion for Summary Judgment, it would be inappropriate for the Court to make any determinations as to his relationship to either the LLC or the Inc. In order to pierce the corporate veil, the

plaintiffs must **plead** and prove that Hsiang I had either: (1) complete control over the LLC to such an extent that he had complete control over the ownership of the LLC, but also had "complete domination, not only of the finances but of policy and business practices...." (Saphire v. Neustadt, 177 Conn. 191, 210 (1979)); or (2) a unity of interest and control over the LLC such that the independence of the LLC ceased to exist (Id. at 210).

Neither situation applies to Hsiang I. Although Hsiang I was the sole member of the LLC, he turned complete control of all aspects of the LLC's management and operation over to his son Le Shih Chang. (See, Defendants' Memorandum, Exhibit A at ¶¶ 4-13; Exhibit D; Exhibit E; and Exhibit N at ¶¶ 2-15.) Although the plaintiffs have shown that Hsiang I signed a few checks many years ago on behalf of the LLC and may have assisted some of the plaintiffs when they worked in the kitchen, the examples cited by the plaintiffs fall far short of the complete control and domination needed to pierce the corporate veil and do not create an issue of fact as to Hsiang I's lack of complete control and domination over the LLC. This issue is addressed by C.G.S. § 34-133(a) which states, in pertinent part, that:

> a person who is a member or manager of a limited liability company is not liable, solely by reason of being a member or manager, under a judgment, decree or order of a court, or in any other manner, for a debt, obligation or liability of the limited liability company, whether arising in contract, tort or otherwise or for the acts or omissions of any other member, manager, agent or employee of the limited liability company.

As for the Inc., Hsiang I had no ownership interests whatsoever and had no control or authority as to its management or operations. (See, Defendants' Memorandum, Exhibit A at ¶¶ 4-13; Exhibit D; Exhibit E; and Exhibit N at ¶¶ 2-15.) It is disingenuous for the plaintiffs to claim that Hsiang I had any control or domination over the corporation.

### III. CONCLUSION:

The plaintiffs have failed to demonstrate the existence of any genuine issues of material fact which are in dispute and defendants Hsiang I Chang and Wei Wei Chang are entitled to summary judgment for the reasons stated in their Motion for Summary Judgment, the Memorandum of Law in Support of the Motion for Summary Judgment and their Local Rule 56(a)(1) Statement, which are dated December 2, 2009, as well as in their Supplemental Motion for Summary Judgment and Supplemental Memorandum of Law which are dated February 1, 2010.

DEFENDANTS:
HSIANG I CHANG AND WEI WEI CHANG

By: /s/
Christopher M. Harrington, Esq.
Fed Bar No: ct 16851
Howard, Kohn, Sprague & FitzGerald
237 Buckingham Street
Hartford CT 06126-1798
Ph: (860) 525-3101; Fax: (860)247-4201
cmh@hksflaw.com

## CERTIFICATION

I hereby certify that on March 8, 2010, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of this Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Michael J. Wishnie, Esq.
Muneer I. Ahmad, Esq.
Jerome N. Frank Legal Services
Yale Law School
127 Wall Street
New Haven, CT 06511

                                                /s/
                            Christopher M. Harrington, Esq.