**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **BING WU, FENG CHUN GUAN, TINA** : | |
| **WANG, GUI BIN CAI, JUN ZHANG,** : | |
| **QIN PIN YUAN, JIN LU MA, ZHEN HAI** : | |
| **HE, and BAO WEN TAN,** : | **3:08-cv-746 (WWE)** |
| **Plaintiffs,** : | |
| : | |
| **v.** : | |
| : | |
| **CHANG'S GARDEN OF STORRS, LLC,**: | |
| **CHANG'S GARDEN OF CT, INC., LE** : | |
| **SHIH CHANG, HSIANG I CHANG,** : | |
| **and WEI WEI CHANG,** : | |
| **Defendants.** : | |

**MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT**

In this multi-count complaint, plaintiffs Bing Wu, Feng Chun Guan, Tina Wang,

Gui Bin Cai, Jun Zhang, Quin Ping Yuan, Jin Lu Ma, Zhen Hai He, and Bao Wen Tan

allege that defendants Chang's Garden of Storrs, LLC ("Chang's Garden LLC"),

Chang's Garden of CT, Inc., Le Shih Chang, Hsiang I Chang, and Wei Wei Chang

violated the federal Fair Labor Standards Act ("FLSA"), the Connecticut Minimum Wage

Act, and the Connecticut Unfair Trade Practices Act ("CUTPA").  Additionally, plaintiffs

assert claims of intentional infliction of emotional distress, negligent infliction of

emotional distress, breach of implied agreement, unjust enrichment and quantum

meruit.

Defendants Hsiang I Chang and Wei Wei Chang have filed a motion for

summary judgment, which will be granted in part and denied in part.

**BACKGROUND**

The parties have filed statements of facts along with supporting exhibits and affidavits. These materials reflect the following factual background.

Chang's Garden LLC was formed in 1998, with defendant Hsiang I Chang named as president and sole member. Hsiang I Chang is defendant Le Shih Chang's father.

In November 1998, Chang's Garden LLC bought Golden Crown Restaurant of Storrs, Inc., d/b/a Hong Kong Restaurant. Hsiang I Chang signed the "Buy and Sell Agreement" on behalf of Chang's Garden LLC. This restaurant became known as "Chang's Garden" and employed plaintiffs in various positions as restaurant workers.

By affidavit, Hsiang I Chang has averred that he worked in Chang's Garden as a cook and did not supervise or control employee work schedules or conditions of employment. He asserted that he did not manage the business with regard to its finances, staffing, record keeping or operation. In his deposition, he stated that he authorized his son, Le Shih Chang, to manage all of these aspects of the restaurant business.

By affidavit, Le Shih Chang represented that he needed his father to be named as the sole member of the LLC that owned the restaurant because he was then a resident alien and had bad credit.

Evidence demonstrates that Hsiang I Chang maintained the Food Service License for the restaurant from 2002 through 2005, and he signed several checks on behalf of the restaurant relative to the taxes and payroll management. He signed one check to cover a purchase from a supplier, and he made a check out to himself for

2

$25,000, which Le Shih Chang explained was used to pay in cash for repairs to the restaurant's exhaust system.  In 2007, he received $21,000 from Chang's Garden LLC for repayment of the investment he had made in the restaurant.

Three plaintiffs, Feng Chun Guang, Zhen Hai He, and Tina Wang stated that Hsiang I Chang provided some instruction on their kitchen work and also reported negatively on the work of another cook who was subsequently fired.  Plaintiff Zhen Hai He averred that Hsiang I Chang would sometimes say, "Let's go home," and that Hsiang I Chang would also tell the workers when to arrive in the morning.

Plaintiffs Jin Lu Ma, Jun Zhang, Qi Ping Yuan and Gui Bin Cai represent that Hsiang I Chang never provided them with any instruction.  Plaintiffs Ma and Yuan also state that Hsiang I Chang did not make any salary payments to them.

Defendant Wei Wei Chang worked as a hostess at the restaurant.  She has no financial ownership interest in either Chang's Garden LLC or Chang's Garden of CT, Inc.[1]  In her position as hostess, Wei Wei Chang was responsible for greeting and seating customers, processing payments, taking orders, ordering supplies, making drinks, and keeping records of the amount of money received for food and beverage orders each day.  She distributed tips at the end of the day.  On occasions, she provided cash or signed checks to pay certain plaintiffs their salary.  She also signed checks to make payments to various creditors and state agencies.  However, Wei Wei Chang explained that she only signed checks according to instruction from either Le

---

[1]Wei Wei Chang is Le Shih Chang's sister.

Shih Chang or her sister, Susan Chang.  She signed the name, Susan Chang, rather than her own name on these checks.[2]

Wei Wei Chang had some interaction with the other restaurant employees.  She would remind the wait staff to check customer identification cards and also to clean tables as necessary.  When requested, she also instructed wait staff on the location of plates and utensils and showed them how to use the credit card machine.  Zhen Hai He averred that she would tell the kitchen staff what orders to fill first and scold the workers for getting orders wrong.  According to Tina Wang, a preparation cook, Wei Wei Chang instructed her on cooking work and wrongly reprimanded her for making a mistake on an order.  Wang also reported that Wei Wei Chang ordered her to make meals for the staff and informed her that her salary was not raised because Wang would not do so.  Another preparation cook, Feng Chun Guan, stated that Wei Wei Chang instructed him to clean glasses, cook more rice, clean the sink or take out the trash.  He averred that she always used a loud voice whenever she spoke to him.

Plaintiff Bing Wu represented that Wei Wei Chang gave him his delivery orders and instructed him to run errands for the restaurant.  He reported that Wei Wei Chang became angry with him when he demanded that she reimburse him for gas money for running errands, and when he confronted her about short-changing him on a tip.

Wei Wei Chang never entered into any agreements with any employees of Chang's Garden LLC or Chang's Garden of CT., Inc. regarding the terms of their

---

[2]In her deposition, Susan Chang explained that she had authorized Wei Wei Chang to sign the checks on her behalf.

4

employment or their housing accommodations, and she never provided housing for any

of the restaurant workers.

### DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue

as to any material fact and it is clear that the moving party is entitled to judgment as a

matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Only when

reasonable minds could not differ as to the import of the evidence is summary judgment

proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

The burden is on the moving party to demonstrate the absence of any material

factual issue genuinely in dispute.  Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664

F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists,

the court must resolve all ambiguities and draw all reasonable inferences against the

moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential

element of her case with respect to which she has the burden of proof, then summary

judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party

submits evidence which is "merely colorable," legally sufficient opposition to the motion

for summary judgment is not met.  Liberty Lobby, 477 U.S. at 24.

FLSA

Defendants assert that neither Hsiang I Chang nor Wei Wei Chang represent

employers as contemplated for FLSA liability.

The statute defines an employer as "any person acting directly or indirectly in the

interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The Supreme

Court has directed courts to afford this definition an expansive interpretation.  Falk v. Brennan, 414 U.S. 190, 195 (1973).

To determine employer status, courts have applied an "economic reality" test, which considers the following factors: Whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.  Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984).  The economic reality test is based on the totality of the circumstances of the relationship between the party-defendant and the business; no one factor is alone dispositive.  Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999). Control may be exercised occasionally without removing the alleged employer from the statute's coverage.  Id.

The economic reality test involves a fact specific inquiry but the ultimate decision as to whether a party is an employer is a question of law.  Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 76 (2d Cir. 2003); Schultz v. Capital Int'l Sec. Inc., 466 F.3d 298, 304 (4th Cir. 2006).  In order to grant summary judgment for a defendant employer, a district court need not decide that every factor weighs against a finding of employer status. Zheng, 355 F.3d at 77.  Nevertheless, the Second Circuit has commented that it is rare that an employer determination can be made on summary judgment.  Barfield v. New York City Health and Hosps. Corp., 537 F.3d 132, 144 (2d Cir. 2008).

Hsiang I Chang

As to Hsiang I Chang, the Court finds that disputed issues of fact preclude summary judgment in his favor.  His status as sole owner and president of the LLC that

6

bought and that owned the restaurant for several years relevant to this action should have afforded him the power to exercise control.  He stated that he authorized his son to manage the restaurant, and evidence raises inferences that he presented at least some supervisory authority over the kitchen workers, could set work schedules for kitchen staff, and may have had a role in the firing of a cook.  Accordingly, the Court cannot determine from the instant record whether Hsiang I Chang constitutes an employer for FLSA purposes.

Wei Wei Chang

The Court finds that Wei Wei Chang does not fall within the statutory definition of an FLSA employer.

Plaintiffs assert that Wei Wei Chang had the power to hire employees because she allegedly recruited her brother-in-law, Ya Hua Lin, to work at the restaurant.  In her deposition, Wei Wei Chang stated that Lin applied to work at the restaurant because he knew Le Shih Chang through her marriage.[3]

She admits that, for immigration purposes, she wrote checks indicating that Lin worked at the restaurant permanently in December 2006, although Lin states that he did not commence permanent work at the restaurant until 2007.  Plaintiffs assert that Le Shih Chang's statement that Lin's 2006 employment was not his affair demonstrates that Wei Wei Chang had the power to hire Lin.[4]   Even construing the evidence in

_____

[3]Ya Hua Lin claims that she informed him of the job availability.

[4]The cited deposition evidence does not appear to support plaintiffs' assertion that Le Shih Chang made this statement.  However, for purposes of ruling on this motion, the Court will assume that he did.

plaintiffs' favor, the Court is unable to make such an inferential leap.  This evidence only indicates  that Wei Wei Chang took advantage of her check writing ability to help a relative for immigration purposes.  It fails to evince that she retained hiring or firing authority at the restaurant.  The first factor does not favor the plaintiffs.

The record demonstrates that Wei Wei Chang did assist other dining room employees by reminding them of certain tasks, instructing them on the location of utensils or dinnerware and how to operate the credit card machine.  She also gave delivery man Bing Wu his orders.  As to the dining room staff and delivery man, Wei Wei Chang's conduct is consistent with her job duties as a hostess.

Plaintiffs who worked in the kitchen described Wei Wei Chang as being aggressive, speaking loudly and giving them orders as to the priority of meal preparation.  Tina Wang claimed that Wei Wei Chang ordered her to make food for the employees, but it can be inferred from her declaration that Wang did not comply with this direction.[5]  No evidence indicates that Wei Wei Chang instructed plaintiffs when to report to work, and plaintiffs' brief admits that she did not alone determine the employee plaintiffs' work day.  Although Wei Wei Chang may have engaged in some supervision of the kitchen plaintiffs, her direction of employees appears focused primarily upon managing customer orders.  The record demonstrates that she did not hold an integral role in setting the conditions of plaintiffs' employment.

It is undisputed that Wei Wei Chang was allowed to sign paychecks to employees, to distribute cash payments, and to sign checks for unemployment benefits.

---

[5]Wang states that Wei Wei Chang informed her that her salary was not raised because she did not cook for employees.

Plaintiffs point out that an individual's authority to sign paychecks is relevant to the consideration of employer status.  Herman, 172 F.3d at 140.  However, Wei Wei Chang did not have authority to sign the checks using her own name.  Thus, only Wei Wei Chang's limited check writing ability favors plaintiffs' position.[6]

Plaintiffs analogize Wei Wei Chang's employer status to the district court's finding in Chao v. Vidtape, Inc., 196 F. Supp. 2d 281, 291 (E.D.N.Y. 2002), modified on other grounds, 66 Fed. Appx. 261 (2003).  However, the facts concerning Wei Wei Chang are distinguishable.

In their brief, plaintiffs represent that the district court in Vidtape found "that a defendant who had authority to sign checks for the business, hire and prioritize work for employees and instructed employees as to aspects of their jobs, and to whom employees reported in the absence of the President and sole shareholder of the company was an employer."  However, the district court also noted that the individual defendant was president of a corporation that bought a portion of Vidtape, and that he became employer to those who had previously worked for Vidtape.  In this case, Wei Wei Chang had no hiring authority, minimal supervisory authority, and she never retained ownership interest or officer or shareholder status in the restaurant.

Vidtape's holding relevant to the father of the corporate officer defendant is more analogous to the instant circumstances.  There, the district court held that the father, who was also not an owner, shareholder or officer, was not an employer even though most employees thought he was a boss, he gave employees orders on occasion, and

---

[6]Plaintiffs do not argue satisfaction of the fourth factor concerning maintenance of employment records.  However, failure to meet this factor is not dispositive.  Id.

attended employee meetings.  Nevertheless, the district court reasoned that he was not

an employer because he did not "hold an integral role in Vidtape's operations, or in

setting work policies, schedules or conditions of employment."  Chao, 196 F. Supp. 2d

at 291.  Here, the record shows that Wei Wei Chang did give some instruction and may

have appeared to some employees as a boss but she was not integral to setting work

policies, schedules or conditions of employment.

Plaintiffs also advance as persuasive authority Ke v. Saigon Grill, Inc., 595 F.

Supp. 2d 240, 265 (S.D.N.Y. 2008).  In their brief, plaintiffs state:

> the district court considered whether a manager like Wei Wei Chang was
> an employer within the meaning of FLSA. . . . Like Wei Wei Chang, this
> putative employer "did not himself determine the plaintiffs' workday and
> did not have authority to set wages. . . , The court nevertheless found that
> he was employer, noting that he "had the authority to terminate
> employees, and to impose sanctions . . . [and] assigned their work."

Unlike this case, the Ke record demonstrated that the defendant manager hired

and fired employees, and he had "significant managerial authority in operating" the

restaurants.  595 F. Supp. 2d at 265.  Here, as previously discussed, the record has

failed to demonstrate that Wei Wei Chang had hiring and firing authority.  Wei Wei

Chang's role within the restaurant was generally devoted to facilitating the distribution of

orders to the customers and providing assignments to the delivery man.  She did make

some cash payments to employees, and she wrote checks out under Susan Chang's

name.  However, this occasional function is not sufficient to find that she had a significant or meaningful managerial authority over the operations of the restaurant.[7]

Plaintiffs seize upon <u>Ke</u>'s language that the defendant manager "understood the conditions under which plaintiffs were working, including their wages, and readily lent himself to, and facilitated, a system under which they were denied their rights under federal and state law." However, plaintiffs provide no evidentiary support for their assertion that Wei Wei Chang facilitated the conditions under which plaintiffs lived and worked.

In light of Wei Wei Chang's lack of ownership interest or position as a decision maker, and her limited supervision and instruction to the plaintiff employees, the Court finds that Wei Wei Chang did not have a meaningful role to justify imposing FLSA liability upon her for the alleged violations of plaintiffs' rights.  Summary judgment will be granted in Wei Wei Chang's favor as to the FLSA claims.

<u>Connecticut Minimum Wage Act Violation</u>

Plaintiffs' second count alleges that defendants Hsiang I Chang and Wei Wei Chang are liable as employers under the Connecticut Minimum Wage Act, Connecticut General Statutes ("CGS") § 31-58.  Defendants argue that they do not fall within the statutory definition of employer.

As used in CGS § 31-72, the term employer "encompasses an individual who possesses the ultimate authority and control within a corporate employer to set the

---

[7]In <u>Ke</u>, the district court also declined to hold the sister of the employer defendant liable as an employer based upon her assignment of work to delivery men during periods when her brother and his wife were not present.  <u>Id.</u>

hours of employment and pay wages and therefore is the specific or exclusive cause of improperly failing to do so."  Butler v. Hartford Technical Institute, Inc., 243 Conn. 454, 462 (1997).  In so holding, the Connecticut Supreme Court declined to adopt the economic reality test applicable to the FLSA definition of employer.  Id. at 462 n.8. Nevertheless, consistent with the foregoing discussion relevant to employer status under the FLSA, the Court finds that disputed issues of fact concerning the scope of Hsiang I Chang's authority preclude summary judgment in his favor.

Similarly, the evidence adduced evinces that Wei Wei Chang did not possess the "ultimate authority and control" to set the plaintiffs' hours or pay their wages. Accordingly, the Court will grant summary judgment in Wei Wei Chang's favor on count two.

Intentional and Negligent Infliction of Emotional Distress and CUTPA Based on Substandard Housing Against Hsiang I Chang

In their third and fourth counts, plaintiffs allege that defendants intentionally and negligently caused them emotional distress because of systematic abuse, criticism, harassment and the provision of substandard housing.  In their sixth count, plaintiffs allege that defendants violated CUTPA based on the substandard housing.

Defendant Hsiang I Chang argues that summary judgment should be granted on the emotional distress claims because his conduct with regard to plaintiffs did not rise to the level required for emotional distress liability.  Specifically, he asserts that he had limited interaction with plaintiffs and did not provide them with housing.

Plaintiffs' brief clarifies that the emotional distress and CUTPA claims are all based on the housing payments by Chang's Garden LLC on behalf of plaintiffs Wu and

Zhang.  Plaintiffs maintain that Hsiang I Chang should personally liable for these torts by piercing the corporate veil of Chang's Garden LLC.  Accordingly, the Court will examine whether Hsiang I Chang may be liable on the basis that Chang's Garden LLC made payments for plaintiffs' housing.

Plaintiffs Wu's and Zhang's Claims of Intentional and Negligent Infliction of Emotional Distress Based on Substandard Housing

To prevail on their claim of intentional infliction of emotional distress, plaintiffs must establish: (1) that defendant Hsiang I Chang intended to inflict emotional distress or knew or should have known that his conduct would likely result in emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct in question was the cause of plaintiffs' distress; and (4) that the emotional distress experienced by plaintiffs was severe.  Carrol v. Allstate Ins. Co., 262 Conn. 433, 443 (2003).

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!

Appleton v. Board of Educ. of Town of Southington, 254 Conn. 205, 210 (2000). Whether defendant Hsiang I Chang's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Benton v. Simpson, 78 Conn. App. 746, 753 (2003).

A claim of negligent infliction of emotional distress requires plaintiffs to demonstrate that defendant Hsiang I Chang should have realized that his conduct involved an unreasonable risk of causing emotional distress and that this distress might result in illness or bodily harm.  See Larobina v. McDonald, 274 Conn. 394, 410 (2005).

13

This test requires that the fear or distress experienced by plaintiffs be reasonable in light of defendant's conduct.  Carrol, 262 Conn. at 447.

Plaintiffs have submitted evidence of housing violations and plaintiffs' affidavits averring to a crowded, cold apartment with poor plumbing.  Plaintiffs represent that certain rodents had been sighted and caught in the apartment and that these living conditions caused them emotional distress.  The undisputed fact that Hsiang I Chang stayed at certain times in the apartment raises the strong inference that he was aware of its condition.

Defendants have submitted evidence showing that the apartment was part of a house owned by Le Shih Chang.  The record fails to evince that Hsiang I Chang had any authority as to the conditions of the apartment or the ability to make improvements to the property.  Further, no evidence shows that any restaurant employee was forced to live in the apartment or that any money was deducted from plaintiffs' wages.

In fact, the evidence indicates that Chang Garden's LLC would pay $200 to Le Shih Chang for each employee who chose to reside in Le Shih Chang's apartment, and if the employee chose to live else where, Chang's Garden LLC would provide $200 to offset that employee's housing expenses.

Without any inference that Hsiang I Chang had any authority over the conditions of the apartment, that the payments were deducted from salary owed, or that plaintiffs had no other choice but to live in the substandard housing, the Court cannot find that making payments for the plaintiffs Wu's and Zhang's housing gives rise to outrageous conduct beyond all possible bounds of decency.

14

Similarly, a reasonable jury could not find that Hsiang I Chang should have realized that having payments made for Wu's and Zhang's housing in a place that they were free to reject for other premises would result in severe emotional distress.

Accordingly, the Court will grant the motion for summary judgment on the claims for intentional and negligent infliction of emotional distress.[8]

CUTPA

Plaintiffs allege that "Defendants, by collecting rent from the wages of the Restaurant Workers for housing owned by them which did not meet statutory standards of habitability, committed 'unfair or deceptive acts or practices in the conduct of any trade or commerce' within the meaning of CUTPA, Conn. Gen. Stat. § 42-110b."

Defendant Hsiang I Chang argues that he did not provide the housing.  He asserts further that the arrangement for Chang's Garden LLC to pay for plaintiffs' housing arrangement was incidental to the plaintiffs' employment and is therefore not within the contemplation of CUTPA.

CUTPA requires that a plaintiff have a business relationship with a defendant. Pinette v. McLaughlin, 96 Conn. App. 769, 778 (2006).  A CUTPA violation occurs when a defendant's conduct occurs in the performance of a trade and commerce, which is defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity , or thing of value in this state." Conn. Gen. Stat. § 42-110a (4).

---

[8]This ruling does not bear upon whether Le Shih Chang may be liable for emotional distress based on the provision of substandard housing.

15

The Connecticut Supreme Court has adopted the following factors known as the "cigarette rule" to determine whether a trade practice is unfair or deceptive:

> (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statute, the common law, or otherwise – whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors, or other businessmen.

A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 215 (1990).

Acts within the employer-employee relationship are not between a consumer and commercial vendor and do not fall within the definition of trade or commerce for the purposes of an action under CUTPA. Quimby v. Kimberly Clark Corp., 28 Conn. App. 660, 670 (1992). "Although an employer may engage employees for the purpose of promoting trade or commerce, the actual employment relationship is not itself trade or commerce for the purpose of CUTPA." Banerjee v. Robert, 641 F. Supp. 1093, 1108 (D. Conn. 1986). Similarly, "purely intracorporate conflicts do not constitute CUTPA violations." Ostrowski v. Avery, 243 Conn. 355, 379 (1997).

However, a private cause of action exists under CUTPA for a violation of statutes covering the landlord/tenant relationship. Conaway v. Prestia, 191 Conn. 484, 491 (1983) (renting of unhabitable apartments to fifty-five tenants in four apartment buildings without certificates of occupancy offended public policy). Nevertheless, when a plaintiff's occupancy of a premises is incidental to the employment, the relationship is

not that of landlord and tenant, although such arrangement may represent a license in real property.  <u>Muniz v. Kravis</u>, 59 Conn. App. 704, 715 (2000).[9]

In <u>Muniz</u>, the Connecticut Appellate Court considered whether an employee who lived on the employer's premises as part of her compensation as a cook had alleged facts to support her assertion of a landlord-tenant relationship.  In so holding, the Appellate Court noted that the complaint indicated that the use and occupancy of the premises was "incidental to and for the purpose of the employment," and that there was no allegation that "the value of the occupancy was deducted from wages otherwise due."  59 Conn. App. at 715.

Plaintiffs maintain that this case is distinguishable from the circumstances of <u>Muniz</u> because there was an agreement for Chang's Garden LLC to pay rent on behalf of plaintiffs.  As previously stated, plaintiffs have failed to adduce evidence raising an inference that the value of the occupancy was deducted from wages otherwise due.  However, the evidence indicates that the housing payments constituted a benefit of employment regardless of whether plaintiffs chose to live in Le Shih Chang's apartment.  Accordingly, the Court finds that, as an employment benefit, making the housing payments was incidental to and for purpose of the employment.  Summary judgment is appropriate on the CUTPA claim because the act of making the payments

---

[9]Unlike a lease, a license in real property grants the licensee the privilege to act on the land of another, without affording the licensee any interest in the property.  <u>Clean Corp. v. Foston</u>, 33 Conn. App. 197, 203 (1993).

does not constitute a trade or commerce that falls within the statute.[10]  Because the

Court has found that summary judgment may be granted on the emotional distress and

CUTPA claims, it need not consider whether veil piercing is appropriate.

Intentional Infliction of Emotional Distress Against Wei Wei Chang

Wei Wei Chang seeks summary judgment on the claim for intentional infliction of

emotional distress because her conduct toward plaintiffs cannot be considered extreme

and outrageous.  Plaintiffs counter that her conduct toward Bing Wu was extreme and

outrageous.

In considering what constitutes extreme and outrageous behavior in the

workplace, the Connecticut Supreme Court has stated that the conduct must

"transgress the bounds of socially tolerable behavior."  Parsons v. United Technologies

Corp., 243 Conn. 66, 89 (1997).  Connecticut courts have held that "insults, verbal

taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad

manners or results in hurt feelings do not support a claim for intentional infliction of

emotional distress."  Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 195 (D. Conn.

2000) (citing cases).

In this instance, plaintiff Wu claims that Wei Wei Chang treated him poorly

compared to other employees; scolded him on one occasion when he tried to recover

$3 of a $5 tip owed to him; exploited him by requiring him to help her move her

---

[10]Consistent with plaintiffs' argument that Hsiang I Chang is personally liable for CUTPA violations based on Chang Garden LLC's payments for plaintiffs' housing, this ruling only considers Hsiang I Chang's CUTPA liability based on the LLC's payments for plaintiffs' housing.  This ruling has not considered the CUTPA liability of Le Shih Chang or Chang's Garden of CT, Inc.

18

belongings from Flushing to Connecticut without pay; and failed to reimburse him for mileage when he used his car to run errands for the restaurant.  Such treatment may have caused Wu some distress but it does not "transgress the bounds of socially tolerable behavior."  Accordingly, the Court will grant summary judgment on this count.

Negligent Infliction of Emotional Distress Against Wei Wei Chang

Wei Wei Chang argues that summary judgment should be entered in her favor on this claim.  Plaintiffs' brief poses no counter arguments.  Summary judgment will enter in her favor absent objection.  "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003).

CUTPA Claim against Wei Wei Chang

Wei Wei Chang argues that summary judgment should be entered in her favor on the CUTPA claim because she was not involved in the provision of housing for plaintiffs.  Plaintiffs' brief devotes its opposition to treatment of the CUTPA claim against Hsiang I Chang and piercing the corporate veil.  Thus, absent objection, summary judgment will enter on the CUTPA claim against Wei Wei Chang.

Quantum Meruit, Unjust Enrichment, Breach of Implied Contract

Defendants Hsiang I Chang and Wei Wei Chang assert that summary judgment is appropriate on these claims.  Plaintiffs provide no counter argument.  Accordingly, the Court will grant summary judgment in defendant Hsiang I Chang and Wei Wei Chang's favor on these counts.

19

**CONCLUSION**

For the foregoing reasons, the Motion for Summary Judgment [docs. # 208 & 226] is DENIED as to the FLSA and Connecticut Minimum Wage Act claims against Hsiang I Chang and GRANTED as to all other claims against Hsiang I Chang and Wei Wei Chang.  Plaintiffs are instructed to amend their complaint consistent with this ruling within five days of this ruling's filing date.

_____/s/_____

Warren W. Eginton
Senior U.S District Judge

Dated this _10th_ day of March, 2010 at Bridgeport, Connecticut.