**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**
-----------------------------------------------------------------X

| | | |
|---|---|---|
| BING WU, FENG CHUN GUAN, TINA WANG, | : | |
| GUI BIN CAI, JUN ZHANG, QIN PING YUAN, | : | |
| JIN LU MA, ZHEN HAI HE, and BAO WEN TAN, | : | |
| | : | |
| Plaintiffs, | : | **3:08-cv-746** |
| | : | |
| -against- | : | **Fifth Amended** |
| | : | **Complaint** |
| CHANG'S GARDEN OF STORRS, LLC, | : | |
| CHANG'S GARDEN OF CT, INC., | : | |
| LE SHIH CHANG, and | : | |
| HSIANG I CHANG | : | |
| | : | |
| Defendants. | : | |

-----------------------------------------------------------------X

<u>FIFTH AMENDED COMPLAINT</u>

1.   Plaintiffs Bing Wu, Feng Chun Guan, Tina Wang, Gui Bin Cai, Jun Zhang, Qin

Ping Yuan, Jin Lu Ma, Zhen Hai He, and Bao Wen Tan (collectively, the "Restaurant

Workers") were all employees of Chang's Garden of Storrs, LLC and Chang's Garden of

CT, Inc. ("Chang's Garden"), owned and operated by Le Shih Chang and his father

Hsiang I Chang, (collectively, "Defendants") at various periods between 1999 and 2008.

2.   Each Restaurant Worker regularly worked approximately 70 hours per week, but

none received overtime compensation as required by state and federal law, and most did

not receive the lawful state or federal minimum wage.  During their employment, the

Defendants housed the Restaurant Workers in a cramped, dilapidated basement apartment

that violated provisions of the municipal housing and zoning codes.

3.   In addition, the Defendants breached explicit and implied oral promises made to

the employees, and discriminated against Plaintiff Tina Wang in terms of pay based on

her gender.

4.   Restaurant Workers bring this action in order to recover monies owed to them in unpaid wages and unpaid overtime, liquidated damages, costs, and attorney's fees, and damages for intentional and negligent infliction of emotional distress by the Defendants.

<u>JURISDICTION AND VENUE</u>

5.   This court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). This court has supplemental jurisdiction over the Restaurant Workers' state law claims pursuant to 28 U.S.C. § 1367.

6.   Venue is proper pursuant to 28 U.S.C. § 1391(b), as all events giving rise to the claim occurred within this district, and pursuant to 28 U.S.C. § 1391(c), as Defendant Chang's Garden Restaurant is subject to personal jurisdiction in the State of Connecticut.

<u>PARTIES</u>

7.   Plaintiff Bing Wu was employed from on or about September 7, 2004, until on or about December 30, 2007, as a delivery person by Defendants.

8.   Plaintiff Feng Chun Guan was employed from on or about January 20, 2007, until on or about August 20, 2007, as a kitchen helper by Defendants.

9.   Plaintiff Tina Wang was employed from on or about August 15, 2007, until on or about February 11, 2008, as a prep cook by Defendants.

10.   Plaintiff Gui Bin Cai was employed from on or about March 23, 2002, until on or about July 26, 2007, as a prep cook by Defendants.

11.   Plaintiff Jun Zhang was employed from on or about September 27, 2005, until on or about October 31, 2006, as a deep fry cook by Defendants.

1

12.     Plaintiff Qin Ping Yuan was employed from on or about April 20, 2001 to on or about November 30, 2001 as a kitchen helper, and from on or about May 4, 2003, until on or about August 1, 2007, as a deep-fry cook by Defendants.

13.     Plaintiff Jin Lu Ma was employed from on or about July 18, 2003, until on or about June 30, 2007, as a stir-fry cook by Defendants.

14.     Plaintiff Zhen Hai He was employed from on or about July 1, 1999, until on or about February 15, 2002, and then again from on or about August 1, 2007, until on or about February 11, 2008.  In the latter period, Mr. He was employed as the main chef by Defendants.

15.     Plaintiff Bao Wen Tan was employed from on or about February 25, 2006 until on or about December 25, 2006 by Defendants. He was employed as a kitchen helper until on or about April 1, 2006 and as deep-fry cook from on or about April 1, 2006 until the termination of his employment.

16.     Defendant Chang's Garden of Storrs, LLC is a limited liability company that registered in Connecticut in 1998. Chang's Garden of Storrs, LLC is an owner and operator of Chang's Garden Restaurant and was at all relevant times an employer of each Plaintiff under state and federal law.

17.     Defendant Chang's Garden of CT, Inc. is a corporation registered in Connecticut in 2004. Chang's Garden of CT, Inc. is an owner and operator of Chang's Garden Restaurant and was at all relevant times an employer of each Plaintiff under state and federal law.

18.     Defendant Le Shih Chang is an owner and manager of Chang's Garden Restaurant. Defendant Le Shih Chang is the President and a registered principal of

Chang's Garden of CT, Inc. Defendant Le Shih Chang was at all relevant times an employer of each Plaintiff under state and federal law.

19.     Defendant Hsiang I Chang is an owner of Chang's Garden Restaurant. Defendant Hsiang I Chang is the President and the only registered principal of Chang's Garden of Storrs, LLC. Defendant Hsiang I Chang was at all relevant times an employer of each Plaintiff under state and federal law.


<u>STATEMENT OF FACTS</u>

<u>Chang's Garden Restaurant Operations</u>

20.     Le Shih Chang was the manager of Chang's Garden Restaurant and oversaw daily operations of the Restaurant at all times relevant hereto.

21.     Hsiang I Chang, father of Le Shih Chang, is the former manager of Chang's Garden Restaurant, and participated in overseeing the operations of the Restaurant at all times relevant hereto.

22.     Both individual Defendants had the power to hire, fire, and determine amount of pay, role, and responsibilities of the employees of Chang's Garden Restaurant.

23.     Wei Wei Chang, older sister of Le Shih Chang, was dining room manager of Chang's Garden Restaurant and oversaw daily operations of the Restaurant at various points between 1998 and 2008.

24.     At all times relevant hereto, Chang's Garden had an annual gross volume of sales or business done not less than $500,000.

25.     At all times relevant hereto, each Defendant, each Plaintiff, and other Chang's Garden  employees all handled, sold, or otherwise worked on goods that moved in or were produced for interstate commerce.

26.     Defendants required each of the Restaurant Workers to work approximately eleven-and-one-half hours per day Monday-Thursday, approximately twelve-and-one-half hours per day on Fridays and Saturdays and approximately ten-and-one-half hours per day on Sundays. The Restaurant Workers typically were allowed one day off per week, but typically not on Fridays or Saturdays. This resulted in a total work week of approximately seventy hours.

27.     The Restaurant Workers typically received two 10-minute breaks each work day, including time provided for meals.  During these breaks, if work arose, Defendants required the Restaurant Workers to stop eating and attend to the work.

28.     The Restaurant Workers' monthly salaries were substantially lower than those received by employees working comparable schedules in other Chinese restaurants in the Storrs area.

29.     Defendants willfully failed to post a notice explaining the Fair Labor Standards Act in a conspicuous place in the workplace, as prescribed by the Wage and Hour Division of the U.S. Department of Labor and required by 29 C.F.R. § 516.4.

30.     Defendants conduct in the workplace caused Restaurant Workers to suffer from regular loss of sleep, nightmares, headaches, and joint pain.

31.     Defendants, in contravention of Conn. Gen. Stat. § 31-66, willfully failed to post a notice of the restaurant minimum wage order, Conn. State Agencies Regs. § 31-62-E1, and of regulations issued by the Labor Commissioner of the State of Connecticut.

32.     Defendants, in contravention of Conn. Gen. Stat. § 31-71f, willfully failed to post a notice in a place accessible to employees with employment practices and policies with regard to wages, vacation pay, sick leave, health and welfare benefits and comparable matters. Defendants also failed otherwise to make such information available to employees in writing.

33.     Defendants also willfully violated the provisions of Conn. Gen. Stat. § 31-71f by failing to advise employees in writing, at the time of hiring, of the rate of remuneration, hours of employment and wage payment schedules.

34.     Defendants intentionally violated provisions of the Connecticut Uniform Food, Drug, and Cosmetic Act, Conn. Gen. Stat. § 21a-93 and § 21a-102 by adding MSG to foods despite advertising otherwise.

35.     Defendants threatened public health and safety by intentionally violating Conn. Agencies Regs. § 19-13-B40(a).  Specifically, Defendants at times reused the rinds of oranges previously served to customers, without washing, in the preparation of dishes that required them as an ingredient for other customers.

36.     Defendants also threatened public health and safety by intentionally violating Conn. Agencies Regs. § 19-13-B42(b), despite the Restaurant Workers' requests to make repairs to a stove exhaust pipe in the kitchen, which regularly dispelled sludge on to the floors.

37.     Chang's Garden Restaurant is featured on the widely used food ordering website www.campusfood.com, where customers can order meals and pay for their food and delivery directly through the internet.

Method of Hiring

38.    At different times, Mr. Wu, Mr. Guan, Mr. Zhang, Mr. Ma, Mr. He and Mr. Tan learned about job openings at Chang's Garden at various employment agencies in Flushing, N.Y. and Manhattan, N.Y.  The employment agencies were typically small, transient operations.

39.    Mr. Wu, Mr. Guan, Mr. Zhang, Mr. Ma, Mr. He and Mr. Tan each paid a flat fee to their respective employment agency and received a slip of paper with the contact information for Chang's Garden, the title of the position available and the salary offered.

40. Mr. Wu, Mr. Guan, Mr. Zhang, Mr. Ma, Mr. He and Mr. Tan each called Chang's Garden, and spoke with a person who identified himself as Le Shih Chang, and who confirmed to each man the offer to work at Chang's Garden.

41.    Defendant Le Shih Chang then told Mr. Wu, Mr. Guan, Mr. Zhang, Mr. Ma, Mr. He, and Mr. Tan which bus would transport them from New York City to Connecticut and that he would pick them up from the bus stop.

42.    Soon after each man's conversation with Le Shih Chang, Mr. Wu, Mr. Guan, Mr. Zhang, Mr. Ma, Mr. He and Mr. Tan packed up a few personal items and boarded buses in New York City with "Connecticut" marked as their destination.

43.    Neither Mr. Wu, Mr. Guan, Mr. Zhang, Mr. Ma, Mr. He nor Mr. Tan knew where Connecticut was located nor did he know where in Connecticut he was going when he accepted the job or boarded his bus.

Method of Housing

44.     After their arrival in Connecticut, Defendant Le Shih Chang transported each Restaurant Worker to the basement of his secluded, suburban home where they resided throughout their employment.

45.     Chang's Garden regularly paid rent on behalf of each individual Restaurant Worker to Le Shih Chang throughout each Restaurant Worker's employment and residence in Le Shih Chang's basement.

46.     Defendant Le Shih Chang supplied housing to approximately eight or nine employees at a time, in a basement space of approximately 1000 square feet.

47.     The living area contained five bedrooms, two toilets, two showers, one living room and one kitchen.

48.     At times when eight employees resided in the basement, two of the bedrooms each housed two employees, three of the bedrooms each housed one employee, and one employee slept in the living room.

49.     The basement was infested with rats and cockroaches, the kitchen sink was nonfunctional, and the ceiling in one of the bathrooms leaked.

50.     Defendants would also turn off the heat in Defendant Le Shih Chang's basement during the day, though the Restaurant Workers generally spent all hours not at the restaurant, including their one day off per week, in the basement.

51.     The poor living conditions in Le Shih Chang's basement caused Restaurant Workers to suffer from regular loss of sleep, nightmares, headaches, and joint pain.

52.     Defendants housed the Restaurant Workers in Le Shih Chang's basement in violation of the zoning and housing provisions of the Mansfield municipal code.

53.     The Mansfield zoning code allows a maximum of four unrelated parties to reside in a single family dwelling such as Le Shih Chang's residence.  The employees housed in the basement comprised eight or nine unrelated parties.

54.     The Mansfield housing code requires separate egress for all bedrooms in the form of a door or accessible window.  Le Shih Chang's basement dwelling failed to meet these requirements.

55.     Some bedrooms in Le Shih Chang's basement lacked any outside windows or large windows leading to rooms with outside windows.


Bing Wu

56.     Mr. Wu began work on or around September 7, 2004, as a delivery person with a salary of $650 paid twice per month, typically on or around the first and the sixteenth day of each month (approximately $4.29/hour). Mr. Wu kept some portion of any tips he received while on the job.  When the customer paid in cash, Mr. Wu was generally permitted to keep the tip. When customers ordered and paid for a food delivery online, Defendants unlawfully retained a portion of the designated tips for themselves. Online food purchases constituted approximately 30% of Mr. Wu's deliveries.

57.     Mr. Wu received $0.50 of the $1.00 delivery fee charged to customers for each delivery by Defendants.

58.     Mr. Wu received one pay raise throughout his employment. Beginning on or around November 1, 2004, Mr. Wu received $700 twice per month (approximately $4.62/hour). Mr. Wu voluntarily left his position at Chang's Garden from on or around January 20, 2005 to on or around May 19, 2005, from on or around December 24, 2005

to on or around January 25, 2006, from on or around May 28, 2006 to on or around July 31, 2006, and from on or around December 24, 2006 to on or around January 14, 2007. Each time that Mr. Wu resumed his position with Chang's Garden Restaurant, he received the salary of $700 twice per month, which he received until his termination on or around December 30, 2007.

59.     Upon being fired, Mr. Wu told Le Shih Chang that he felt that Mr. Chang had broken numerous labor and tax laws with respect to his employment. Le Shih Chang responded with a statement substantially similar to: "You already are planning to sue me, so sue me... I have already spoken to a lawyer."

60.     On or about August 12, 2007, Mr. Wu confronted Wei Wei Chang about the tip stealing from online orders. Wei Wei Chang responded to the effect, "Do you have proof?" and ended stating to the effect, "Either you go or I go."


Feng Chun Guan

61.     Mr. Guan started his employment on or around January 20, 2007 as a cook at a salary of $750 paid twice per month, typically on or around the first and the sixteenth day of each month (approximately $4.95/hr).

62.     Mr. Guan received two pay raises throughout his employment.   Beginning on or around April 16, 2007, Mr. Guan received $800 twice per month (approximately $5.27/hr).  Beginning on or around August 1, 2007, Mr. Guan received $850 twice per month (approximately $5.60/hr).

63.     On or around August 20, 2007, Defendant Le Shih Chang terminated Mr. Guan's employment.

Tina Wang

64.     Ms. Wang began her employment on or around August 15, 2007, and received a pro-rated salary for that day's work at a salary of $1500/month (approximately $4.95/hr). The following month she received $800 twice per month, typically on or around the first and the sixteenth day of each month (approximately $5.60/hr).

65.     Ms. Wang's job was previously occupied by a male worker, Mr. Cai, also a Plaintiff in this action. Before Ms. Wang began working, Defendants paid Mr. Cai $1050 twice per month (approximately $6.92/hr).

66.     Mr. Cai and Ms. Wang both engaged in substantially similar work. Specifically both were responsible for gathering the ingredients for the meals and doing basic food preparation work.

67.     Ms. Wang knew her salary was lower than wages received at similar establishments.

68.     Ms. Wang first asked for a raise during her second month working for the Defendants.

69.     After some bargaining and discussion, Defendants increased her salary to $850 paid twice per month (approximately $5.60/hr).

70.     After Defendants granted Ms. Wang her raise, Defendant Le Shih Chang stopped speaking with her.

71.     During Ms. Wang's third month working for Defendants, Mr. He asked Defendants for a raise on Ms. Wang's behalf. The Defendants refused.

72.     Mr. He then asked Defendants why they paid male employees more than Ms. Wang, to which Defendants did not respond.

73.     On December 23, 2007 Wei Wei Chang and Bing Wu had an argument in the basement, during which Ms. Chang mentioned Ms. Wang's name.  Ms. Wang approached Wei Wei, asked her why she was being mentioned, and pointed out that she worked very hard for little pay.  Wei Wei responded by saying the Defendants did not want a woman working in her position.

74.     Ms. Wang continued to receive $850 twice per month until her termination on or around February 11, 2008.

75.     Defendants deliberately acted to create a work environment for Ms. Wang which any reasonable person would find intolerable, in order to cause Ms. Wang to leave her employment at Chang's Garden.

76.     Defendants created a work environment for Ms. Wang which any reasonable person would find intolerable.

77.     Defendants' treatment of Ms. Wang, leading to her termination, amounted to a constructive discharge.


Gui Bin Cai

78.     Mr. Cai began working at Chang's Garden on or around March 23, 2002, and received a salary of $800 paid twice per month, typically on or around the first and the sixteenth day of each month (approximately $5.27/hr).

79.     Mr. Cai received various pay raises throughout his employment. Beginning on or around March 1, 2003, Mr. Cai received $850 twice per month (approximately

$5.60/hr). Beginning on or around March 1, 2004, Mr. Cai received $900 twice per month (approximately $5.93/hr). Beginning on or around March 1, 2005, Mr. Cai received $950 twice per month ($6.26/hr). Beginning on or around March 1, 2006, Mr. Cai received $1000 twice per month ($6.59/hr). Beginning on or around March 1, 2007 his termination on or about July 26, 2007, Mr. Cai received $1050 twice per month (approximately $6.92/hr).

80.     Defendants deliberately acted to create a work environment for Mr. Cai which any reasonable person would find intolerable, in order to cause Mr. Cai to leave his employment at Chang's Garden.

81.     Defendants created a work environment for Mr. Cai which any reasonable person would find intolerable.

82.     Defendants' treatment of Mr. Cai, leading to his termination, amounted to a constructive discharge.


Jun Zhang

83.     Mr. Zhang began working for Chang's Garden on or around September 27, 2005, as a deep fry cook at a salary of $750 paid twice per month, typically on or around the first and the sixteenth day of each month (approximately $4.95/hr).

84.     When he was hired, Defendants had agreed that Mr. Zhang would receive seven days paid vacation per year. Mr. Zhang received only six days, however, and when he asked Defendant Le Shih Chang for the seventh, the Defendants refused to allow him to take his seventh vacation day.

85. Mr. Zhang received multiple pay raises throughout his employment. Beginning on or around November 15, 2005, Mr. Zhang received $800 twice per month (approximately $5.27/hr). Beginning on or around February 1, 2006, Mr. Zhang received $850 twice per month ($5.60/hr). Beginning on or around October 1, 2006 until his termination on October 31, 2006, Mr. Zhang received $900 twice per month ($5.93/hr).

86. Defendants deliberately acted to create a work environment for Mr. Zhang which any reasonable person would find intolerable, in order to cause Mr. Zhang to leave his employment at Chang's Garden.

87. Defendants created a work environment for Mr. Zhang which any reasonable person would find intolerable.

88. Defendants' treatment of Mr. Zhang, leading to his termination, amounted to a constructive discharge.


Qin Ping Yuan

89. Mr. Yuan began working for Chang's Garden on or around April 20, 2001 as a kitchen helper and remained in that position until he was fired by Defendants, upon information and belief, to create a vacancy for a relative of Defendants. Mr. Yuan received $650 paid twice per month (approximately $4.29/hr), typically on or around the first and the sixteenth day of each month for the period between the commencement of his employment and June 2001. From June 2001 until August 2001, Mr. Yuan received $700 paid twice per month (approximately $4.62/hr). From August 2001 until his termination by Defendants in November 2001, Mr. Yuan received $750 paid twice per month (approximately $4.95/hr).

90.     Mr. Yuan began working for Chang's Garden on or around May 4, 2003, as a deep fry cook at a salary of $850 paid twice per month, typically on or around the first and the sixteenth day of each month (approximately $5.60/hr).

91.     Mr. Yuan received a pay raise on or around December 1, 2004, and subsequently received $900 twice per month (approximately $5.93/hr).  Beginning on or around March 1, 2005, Mr. Yuan received $950 twice per month (approximately $6.26/hr).  Beginning on or around September 1, 2005, Mr. Yuan received $1000 twice per month (approximately $6.59/hr).  Beginning on or around March 1, 2007 until his termination on August 1, 2007, Mr. Yuan received $1050 twice per month (approximately $6.92/hr).

92.     In addition to his duties as a stir-fry cook, Mr. Yuan was also employed by Defendants as a driver.  Acting under orders from Defendants, Mr. Yuan would shuttle employees of Chang's Garden between Defendants' basement apartment and the restaurant on a daily basis in a motor vehicle, which belonged to Defendants.  Defendants regularly required Mr. Yuan to fill up their motor vehicle with gasoline and to ensure maintenance was performed upon it.

93.     Mr. Yuan worked for Defendants as a driver for, on average, approximately six hours per week from the start of his employment on or about May 4, 2003 until his termination.  Mr. Yuan worked these hours in addition to the approximately seventy hours he worked as a stir-fry cook.  Mr. Yuan received $100 twice per month for his services as a driver (approximately $6.67/hr).

94.     Defendants deliberately acted to create a work environment for Mr. Yuan which any reasonable person would find intolerable, in order to cause Mr. Yuan to leave his employment at Chang's Garden.

95.     Defendants created a work environment for Mr. Yuan which any reasonable person would find intolerable.

96.     Defendants' treatment of Mr. Yuan, leading to his termination, amounted to a constructive discharge.


Jin Lu Ma

97.     Mr. Ma started his employment on or around July 18, 2003, as a stir-fry cook earning a salary of $1050 paid twice per month, typically on or around the first and the sixteenth day of each month (approximately $6.92/hr).

98.     Mr. Ma received multiple pay raises throughout his employment.  Beginning on or around July 1, 2004, Mr. Ma received $1100 twice per month (approximately $7.25/hr).  Beginning on or around July 1, 2005, Mr. Ma received $1150 twice per month (approximately $7.58/hr).  Beginning on or around July 1, 2006 until his termination on or around June 30, 2007, Mr. Ma received $1200 twice per month (approximately $7.91/hr).

99.     Defendants deliberately acted to create a work environment for Mr. Ma which any reasonable person would find intolerable, in order to cause Mr. Ma to leave his employment at Chang's Garden.

100.    Defendants created a work environment for Mr. Ma which any reasonable person would find intolerable.

101.    Defendants' treatment of Mr. Ma, leading to his termination, amounted to a constructive discharge.

Zhen Hai He

102.    Mr. He first began working for Chang's Garden on or around July 1, 1999, as a prep cook at a salary of $750 paid twice per month, typically on or around the first and the sixteenth day of each month (approximately $4.95/hr).

103.    Mr. He received multiple pay raises throughout his employment.  Between the approximate dates of July 1, 1999 and February 15, 2002, Mr. He's pay increased from approximately $750 paid twice per month to approximately $1000 paid twice per month (approximately $6.59/hr).  On around February 15, 2002, Mr. He voluntarily terminated his employment with Chang's Garden.

104.    On or around August 1, 2007, Mr. He began working for Chang's Garden again after Le Shih Chang telephoned Mr. He and offered him a position as a senior kitchen staff member.  Le Shih Chang assured Mr. He that he would "start him off" at a salary of $2600/month (approximately $8.57/hr), which is the salary Defendants paid Mr. He until his termination in February 2008, even though the senior kitchen staff member employed prior to Mr. He had received $2800/month (approximately $9.23/hr).

105.    Around September 2007, Ya Hua Lin, Wei Wei Chang's brother-in-law began working at Chang's Garden.

106.    In an effort to push Mr. He out of his role as head chef, a position Ya Hua Lin now holds, Defendants began to treat Mr. He very poorly.

16

107.    Additionally, Le Shih Chang began to frequently demean the quality of Mr. He's work.

108.    Mr. He terminated his employment on or around February 11, 2008.

109.    Defendants deliberately acted to create a work environment for Mr. He which any reasonable person would find intolerable, in order to cause Mr. He to leave his employment at Chang's Garden.

110.    Defendants created a work environment for Mr. He which any reasonable person would find intolerable.

111.    Defendants' treatment of Mr. He, leading to his termination, amounted to a constructive discharge.


Bao Wen Tan

112.    Mr. Tan began working for Chang's Garden on or around February 25, 2006, as a kitchen helper at a salary of $800 paid twice per month, typically on or around the first and the sixteenth day of each month (approximately $5.27/hr). His salary was increased to $850 paid twice per month (approximately, $5.60/hr) on or around April 1, 2006, when he assumed the position of a deep-fry cook. His salary was increased again to $900 paid twice per month (approximately $5.93/hr) on or around August 1, 2006.

113.    On or around December 25, 2006, Le Shih Chang terminated Mr. Tan's employment without warning. Le Shih Chang explained the termination to Mr. Tan with a statement substantially similar to "you are not suited for this work." Mr. Tan had not previously received complaints about the quality of his work.

114.   Mr. Tan believed that, prior to be being fired, he would shortly be owed one week of paid vacation. By firing Mr. Tan when they did, Defendants did not need to give Mr. Tan one week of paid vacation.

<u>FIRST CLAIM FOR RELIEF</u>
FAIR LABOR STANDARDS ACT

115.   The Restaurant Workers repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

116.   The Restaurant Workers bring this claim under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), against all Defendants.

117.   At all times relevant hereto, all Defendants engaged in "commerce" within the meaning of 29 U.S.C. § 203(b).

118.   At all times relevant hereto, Defendant Chang's Garden and all other Defendants engaged the Restaurant Workers in handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, and Chang's Garden was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1).

119.   At all times relevant hereto, each Defendant was an "employer" of each Restaurant Worker within the meaning of 29 U.S.C. § 203(d).

120.   At all times relevant hereto, each Restaurant Worker was an "employee" of each Defendant within the meaning of 29 U.S.C. § 203(e)(1).

121.   Defendants willfully failed to pay Mr. Wu and Ms. Wang the federal statutory minimum wage throughout their entire employment, and failed to pay Mr. He, Mr. Yuan,

Mr. Guan and Mr. Zhang the federal statutory minimum wage during a portion of their employment, in violation of 29 U.S.C. § 206(a)(1).

122.    Defendants willfully paid Ms. Wang wages substantially lower than those paid to male employees for equal work requiring equal skill, effort and responsibility, under similar work conditions, in violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1).

123.    Defendants willfully failed to pay all Restaurant Workers overtime pay for all hours worked in excess of forty hours per week for each week, in violation of 29 U.S.C. § 207(a)(1).

124.    Defendants willfully failed to make, keep, and preserve records of the wages paid and hours worked of all Restaurant Workers in violation of 29 U.S.C. § 211(c).

125.    As a result of these violations, all Restaurant Workers suffered damages and bring suit herein pursuant to 29 U.S.C. § 216(b).

126.    Defendants are jointly and severally liable to all Restaurant Workers for violations of their rights under federal law.

127.    Mr. Wu, Ms. Wang, Mr. Yuan, Mr. He, Mr. Guan, and Mr. Zhang are entitled to an award of damages for unpaid minimum wages, plus liquidated damages in an equal amount, and attorney's fees, in an amount to be determined at trial.

128.    Ms. Wang is entitled to an award for failure to pay wages commensurate with those paid to male workers performing identical work, plus liquidated damages in an equal amount, costs, and attorney's fees, in an amount to be determined at trial.

129.    All Restaurant Workers are entitled to an award of damages for unpaid overtime, plus liquidated damages in an equal amount, costs, and attorney's fees, in an amount to be determined at trial.

SECOND CLAIM FOR RELIEF
CONNECTICUT WAGE AND HOUR LAW

130.    The Restaurant Workers repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

131.    The Restaurant Workers bring this claim under Conn. Gen. Stat. §§ 31-58 *et seq.* of the Connecticut Minimum Wage Act against all Defendants.

132.    At all times relevant hereto, each Defendant was an "employer" of each Restaurant Worker within the meaning of Conn. Gen. Stat. § 31-58(e).

133.    At all times relevant hereto, each Restaurant Worker was an "employee" of each Defendant within the meaning of Conn. Gen. Stat. § 31-58(f).

134.    At all relevant times, each Defendant "employed" each Restaurant Worker within the meaning of Conn. Gen. Stat. § 31-58(h).

135.    Defendants willfully failed to pay Mr. Wu, Mr. Guan, Ms. Wang, Mr. Cai, Mr. Zhang, Mr. Yuan and Mr. Tan the state statutory minimum wage throughout their entire employment, and failed to pay Mr. He and Mr. Ma the state statutory minimum wage during a portion of their employment, in violation of Conn. Gen. Stat. § 31-60.

136.    Defendants willfully failed to pay all Restaurant Workers overtime pay for all hours worked in excess of forty hours per week for each week, in violation of Conn. Gen. Stat. § 31-76c.

137.    Defendants willfully paid Ms. Wang wages substantially lower than those paid to male employees for equal work requiring equal skill, effort and responsibility, under similar work conditions, in violation of Conn. Gen. Stat. § 31-75, for which Ms. Wang is entitled to bring a private action pursuant to § 31-76.

138.    Defendants willfully failed to distribute records of hours worked, earnings and overtime to the Restaurant Workers, in violation of Conn. Gen. Stat. § 31-13a.

139.    Defendants willfully failed to keep records of hours worked by the Restaurant Workers, in violation of Conn. Gen. Stat. § 31-66.

140.    Defendants willfully failed to post a notice of the restaurant minimum wage order, Conn. State Agencies § 31-62-E1, and of regulations issued by the Labor Commissioner of the State of Connecticut, in violation of Conn. Gen. Stat. § 31-66

141.    Defendants willfully failed to post a notice with employment practices and policies with regard to wages, vacation pay, sick leave, health and welfare benefits and comparable matters, in violation of Conn. Gen. Stat. § 31-71f.

142.    Defendants willfully failed to advise employees in writing, at the time of hiring, of the rate of remuneration, hours of employment and wage payment schedules, in violation of Conn. Gen. Stat. § 31-71f.

143.    Defendants willfully failed to provide 30 consecutive minutes for a meal within a seven and one-half hour time period, in violation of Conn. Gen. Stat. § 31-51ii(a).

144.    As a result of these violations, all Restaurant Workers suffered damages.

145.    Defendants are jointly and severally liable to all Restaurant Workers for violations of their rights under state law.

146.    All Restaurant Workers are entitled to an award of damages for twice the amount of unpaid wages, interest, costs, and attorney's fees, in an amount to be determined at trial, pursuant to Conn. Gen. Stat. §§ 31-68(a), 31-76.

147.    Ms. Wang is entitled to an award for failure to pay wages commensurate with those paid to male workers performing identical work, interest, plus liquidated damages, costs, and attorney's fees, in an amount to be determined at trial, pursuant to Conn. Gen. Stat. §§ 31-68(a), 31-76.


THIRD CLAIM FOR RELIEF
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

148.    The Restaurant Workers repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

149.    The Restaurant Workers bring this claim against Defendants Chang's Garden of Storrs, LLC, Chang's Garden of CT, Inc., and Le Shih Chang.

150.    Defendants intentionally engaged in extreme and outrageous conduct which Defendants knew or should have known would inflict severe emotional distress on the Restaurant Workers.

151.    Defendants' extreme and outrageous conduct occurred in part during the discharge or constructive discharge of each Restaurant Worker.

152.    Defendants' conduct which intentionally inflicted distress included systematic abuse, criticism and harassment of the Restaurant Workers in the workplace.

153.    Defendants' conduct which intentionally inflicted distress included the housing of the Restaurant Workers in unsanitary, poorly ventilated, substandard housing, resulting in the deliberate geographic isolation of the Restaurant Workers from other Mandarin speakers.

154.    The Restaurant Workers suffered severe emotional distress that included emotional reactions such as shame, humiliation, embarrassment, anger, disappointment,

worry, helplessness, and powerlessness. This distress was directly caused by Defendants' intentional acts.

155.     The Defendant's intentional acts caused Restaurant Workers to suffer regular loss of sleep, joint pain, nightmares, and headaches.

156.     The Restaurant Workers are entitled to monetary relief for compensatory and punitive damages and interest in an amount to be determined at trial.

FOURTH CLAIM FOR RELIEF
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

157.     The Restaurant Workers repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

158.     The Restaurant Workers bring this claim against Defendants Chang's Garden of Storrs, LLC, Chang's Garden of CT, Inc., and Le Shih Chang.

159.     Defendants negligently engaged in conduct which created an unreasonable risk of causing the Restaurant Workers severe emotional distress, with the potential to inflict illness or bodily harm.

160.     Defendants' extreme and outrageous conduct occurred in part during the discharge or constructive discharge of each Restaurant Worker.

161.     Defendants' conduct which negligently inflicted distress included systematic abuse, criticism and harassment of the Restaurant Workers in the workplace.

162.     Defendants' conduct which negligently inflicted distress included the housing of the Restaurant Workers in unsanitary, poorly ventilated, substandard housing as a customary condition of their employment, resulting in the deliberate geographic isolation of the Restaurant Workers from other Mandarin speakers.

163.     The Restaurant Workers suffered severe emotional distress that included emotional reactions such as shame, humiliation, embarrassment, anger, disappointment, worry, helplessness, and powerlessness. This distress was directly caused by Defendants' negligent acts.

164.     The Defendant's negligent acts caused Restaurant Workers to suffer regular loss of sleep, joint pain, nightmares, and headaches and were sufficient to create a risk of other illness or bodily harm.

165.     The Restaurant Workers are entitled to monetary relief for compensatory damages and interest in an amount to be determined at trial.

FIFTH CLAIM FOR RELIEF
UNJUST ENRICHMENT AND QUANTUM MERUIT

166.     The Restaurant Workers repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

167.     The Restaurant Workers bring this claim against Defendants Chang's Garden of Storrs, LLC, Chang's Garden of CT, Inc., and Le Shih Chang.

168.     By working at Chang's Garden, the Restaurant Workers provided benefits to Defendants.

169.     The Restaurant Workers reasonably expected to be compensated for the labor they provided to Defendants.

170.     Defendants' unjust failure to pay the Restaurant Workers prevailing wages for the labor performed constituted a distinct detriment to the Restaurant Workers.

171.     Accordingly, the Restaurant Workers are entitled to money damages equal to the reasonable value of the labor provided to Defendants, and interest in an amount to be determined at trial.

<u>SIXTH CLAIM FOR RELIEF</u>
CONNECTICUT UNFAIR TRADE PRACTICES ACT

172.     The Restaurant Workers repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

173.     The Restaurant Workers bring this claim under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a *et seq.* ("CUTPA"), against Defendants Chang's Garden of Storrs, LLC, Chang's Garden of CT, Inc., and Le Shih Chang.

174.     Defendant Chang's Garden of Storrs, LLC and Chang's Garden of CT, Inc. paid rent to Le Shih Chang on behalf of the Restaurant Workers for their housing in Le Shih Chang's basement.

175.     At all times relevant hereto, each Defendant was engaged in "trade" or "commerce" within the meaning of Conn. Gen. Stat. § 42-110a(4).

176.     Defendants agreed to provide habitable housing to all Restaurant Workers.

177.     Defendants failed to obtain a certificate of occupancy for Le Shih Chang's basement prior to housing employees, including Restaurant Workers.

178.     Defendant Le Shih Chang failed to make repairs necessary to keep his basement in a fit and habitable condition, in violation of the Connecticut Landlord and Tenant Act, Conn. Gen. Stat. §§ 47a-7(2), 47a-51(c).

179.    Defendant Le Shih Chang failed to keep all common areas of the basement in a clean and safe condition, in violation of the Connecticut Landlord and Tenant Act, Conn. Gen. Stat. §§ 47a-7(3), 47-51(a).

180.    Defendant Le Shih Chang failed to maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, and ventilating facilities in the basement, in violation of the Connecticut Landlord and Tenant Act, Conn. Gen. Stat. §§ 47a-7(4), 47-51(c).

181.    Defendant Le Shih Chang failed to supply reasonable heat to the basement, in violation of the Connecticut Landlord and Tenant Act, Conn. Gen. Stat. § 47a-7(6).

182.    Defendant Le Shih Chang's basement dwelling had bedrooms which lacked outside windows or properly-sized windows to rooms with outside windows, in violation of the Connecticut Landlord and Tenant Act, Conn. Gen. Stat. § 47a-54e.

183.    Defendants compensated the Restaurant Workers for their work in part with housing which did not meet statutory standards of inhabitability.

184.    In lieu of paying the rent of Le Shih Chang's basement to the Restaurant Workers directly as wages, the Defendants transferred rent payments "on behalf of the Restaurant Workers" from Defendant Chang's Garden to its owner, and the Restaurant Workers' effective landlord, Defendant Le Shih Chang.

185.    Defendants, by collecting rent from the wages of the Restaurant Workers for housing owned by them which did not meet statutory standards of habitability, committed "unfair or deceptive acts or practices in the conduct of any trade or commerce" within the meaning of CUTPA, Conn. Gen. Stat. § 42-110b.

186.   Defendants intentionally and wantonly violated the rights of the Restaurant Workers, and acted with reckless indifference to the rights of the Restaurant Workers.

187.   As a result of Defendants' unfair and deceptive conduct, all of the Restaurant Workers suffered damages.

188.   The Restaurant Workers are entitled to an award of damages equal to the amount of rent collected from their wages for housing in Le Shih Chang's basement and interest, plus punitive damages, costs, and attorney's fees in an amount to be determined at trial, pursuant to CUTPA, Conn. Gen. Stat. §§ 42-110g(a), 42-110g(d).

<u>SEVENTH CLAIM FOR RELIEF</u>
BREACH OF IMPLIED CONTRACT

189.   The Restaurant Workers repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

190.   The Restaurant Workers bring this claim against Defendants Chang's Garden of Storrs, LLC, Chang's Garden of CT, Inc., and Le Shih Chang.

191.   Defendants promised the Restaurant Workers housing which would meet legal standards of habitability as part of their compensation for their work at Chang's Garden Restaurant.

192.   The Restaurant Workers fulfilled their duties as employees of Chang's Garden Restaurant.

193.   The housing which Defendants provided to the Restaurant Workers in Le Shih Chang's basement dwelling did not meet legal standards of habitability.

194.   Defendants' failure to provide the Restaurant Workers with legally habitable housing constituted a distinct detriment to the Restaurant Workers.

195.     Accordingly, the Restaurant Workers are entitled to money damages equal to the reasonable value of habitable housing in the Storrs, Connecticut area, and interest.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff Restaurant Workers respectfully request that this Court:

196.     Award Plaintiffs monetary damages for unpaid minimum wages and unpaid overtime, plus liquidated damages in an equal amount, as provided by FLSA, 29 U.S.C. § 216(b),  and interest, in an amount to be determined at trial;

197.     Award Plaintiffs twice the full amount of wages and overtime earned, minus any amount actually paid by the Defendants, as provided by Conn. Gen. Stat. § 31-68(a), and interest, in an amount to be determined at trial;

198.     Award Plaintiff Tina Wang the difference between the amount of her wages and the maximum wage paid to male employees for equal work requiring equal skill, effort and responsibility, under similar work conditions, as provided by Conn. Gen. Stat. § 31-76 and the Equal Pay Act, 29 U.S.C. § 206(d)(1), and interest, in amount to be determined at trial;

199.     Award Plaintiffs the full amount of rent paid on their behalf to Le Shih Chang for their housing in his basement, and interest, as provided by CUTPA, Conn. Gen. Stat. § 42-110(a) plus punitive damages as provided by Conn. Gen. Stat. § 42-110(d), in an amount to be determined at trial.

200.     Award Plaintiffs compensatory and punitive damages and interest for Defendants' violations of Connecticut common law (quantum meruit/unjust enrichment,

28

intentional infliction of emotional distress, negligent infliction of emotional distress, and breach of contract), in an amount to be determined at trial;

201.    Award attorney's fees and costs to Plaintiffs for legal services provided by the Jerome N. Frank Legal Services Organization pursuant to 29 U.S.C. § 216(b) and Conn. Gen. Stat. §§ 31-68(a), 42-110g(a);

202.    Grant such additional and further relief as the Court deems just and proper.


## JURY DEMAND

203.    Plaintiffs hereby demand a jury trial on all claims.


Dated: March 18, 2010


                                    _____/s/_____
                                    Muneer I. Ahmad, Esq., ct28109
                                    Michael J. Wishnie, Esq., ct27221
                                    Susan Hazeldean, Esq., ct28093
                                    Ohad Barkan, Law Student Intern
                                    William C. Collins, Law Student Intern
                                    Anjali Dalal, Law Student Intern
                                    Jerome N. Frank Legal Services Organization
                                    P.O. Box 209090
                                    New Haven, CT 06520-9090
                                    203-432-4800

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 18, 2010, pursuant to Fed. R. Civ. P. 4(d)(1), a copy of the Fifth Amended Complaint, was sent by electronic mail to the following counsel, who has agreed to accept service for all parties.

> James F. Sullivan
> jfs@hksflaw.com
> Howard, Kohn, Sprague, & Fitzgerald, LLP
> 237 Buckingham St.
> Hartford, CT 06106
> Telephone: (860) 525-3101
> Facsimile: (860) 247-4201

>                    /s/ Muneer I. Ahmad
> Muneer I. Ahmad, Esq. ct28109
> Jerome N. Frank Legal Services Organization
> P.O. Box 209090
> New Haven, CT 06511
> Telephone: (203) 432-4800
> Facsimile: (203) 432-1426
> Email: michael.wishnie@yale.edu